Joanne SWIFT, Individually and on behalf of her minor daughter, Michelle Swift, and on behalf of all other persons similarly situated, Plaintiffs,

Lylia Roe, Plaintiff-Intervenor,

v.

Philip L. TOIA, Individually and as Commissioner of the New York State Department of Social Services, Charles W. Bates, Individually and as Commissioner of the Westchester County Department of Social Services, John Battistoni, Individually and as Acting Commissioner of the Dutchess County Department of Social Services, and Gabriel T. Russo, Individually and as Commissioner of the Monroe County Department of Social Services, Defendants.

No. 77 Civ. 2425 (HFW).

United States District Court, S. D. New York.

Nov. 30, 1978.

Westchester Legal Services, Inc., New Rochelle, N. Y. by Steven A. Hitov, Eileen R. Kaufman, New Rochelle, N. Y., Martin A. Schwartz, White Plains, N. Y., for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendants Toia and Blum; Marion R. Buchbinder, Deputy Asst. Atty. Gen., New York City, of counsel.

Sam Dilalla, Chief Social Services Counsel, Monroe County Social Services Dept., Rochester, N. Y., for defendant Russo; James A. Robinson, Rochester, N. Y., of counsel.

## OPINION

WERKER, District Judge.

Plaintiffs move for partial summary judgment in this class action [1] alleging violations of their constitutional rights through defendants' policy of prorating public assistance grants when an individual who has no legal obligation to support a family receiving Aid to Families With Dependent Children ("AFDC"), and who receives non-welfare income sufficient to meet his or her own needs, resides with an AFDC family composed of a parent or care-taker relative and at least one needy child. The basis of the motion is that this practice or policy of proration violates the Social Security Act ("SSA") and regulations promulgated thereunder.

## FACTS

Plaintiff Swift resides in Larchmont, New York with her minor children Michelle, age four, and William Rooney, age eleven. Mrs. Swift and Michelle are AFDC public assistance recipients; William receives $150 per month from his father, plaintiff's former husband, under a support order and is thus ineligible for public assistance.

From May, 1975 until November, 1975, Mrs. Swift received an AFDC grant of $398 monthly for a household of three. This included $198 for plaintiff's actual rent [2]

plus a $200 basic needs allowance for three people. After plaintiff informed the Westchester County Department of Social Services that she was in receipt of William's monthly support payments her grant was recomputed as $289.34. This figure represented a $234 rent allowance for her then actual rent for a household of three, plus a $200 basic needs allowance for a three person household, for a total of $434. $144.66 of William's $150 monthly support payment was then deducted, leaving Mrs. Swift with the $289.34 figure. The $144.66 deduction represented the actual amount of William's per capita monthly needs; [3] thus the final $289.34 grant represented two-thirds of the basic shelter and needs allowance for a three person household. Plaintiff contends that William should not be included in her household and that the proper amount of her AFDC grant should be $362, consisting of a $150 basic needs allowance for two people plus a $212 maximum rent allowance for two [4] rather than two-thirds of the grant for a three person household. [5]

Plaintiff Roe resides in Rochester, New York with her minor daughters Carol, age 8, Cheryl, age 8 and Ann Marie Gauck, age 1. Plaintiff, Carol, and Cheryl are AFDC recipients; Ann Marie is supported by her father and does not receive public assistance. Prior to June 1, 1977 Ms. Roe and all three daughters were in receipt of a month-

---

1. This suit has been the subject of two prior opinions, *Swift v. Toia*, 450 F.Supp. 983 (S.D.N.Y.1978) (motion to dismiss) and 77 Civ. 2425 slip op. (S.D.N.Y. June 20, 1978) (class certification motion). For purposes of this opinion familiarity with those decisions will be assumed.

   The class is defined as
   "persons who are residents of the State of New York, who are, were, or will be recipients of AFDC and whose grants have been, are being, or are threatened to be reduced, modified or suspended pursuant to defendants' policy of prorating the public assistance grant when an individual who has no legal obligation to support the AFDC family and who receives non-welfare income sufficient to meet his or her needs resides with an AFDC family consisting of a parent or care-taker relative and at least one needy child."
   450 F.Supp. at 991.

2. 18 N.Y.C.R.R. § 352.3 (1978) provides for a maximum rent allowance of $259 monthly for a three person household or the actual amount of rent paid, whichever is less.

3. The New York State Department of Social Services computes per capita standards of need based upon the United States Department of Labor's living standards. These are incorporated into Bureau of Labor statistics which vary according to household size. Cushing affid. at 5.

4. 18 N.Y.C.R.R. § 352.3 (1978) provides for a maximum rent allowance of $212 monthly for a two person household or the actual amount of rent paid, whichever is less.

5. At the time of the pendency of this motion, counsel reported to the court that Mrs. Swift was in receipt of a monthly grant of $362 to be reduced to $289.33 per month effective October 1, 1978.

ly AFDC public assistance grant of $450 from the Monroe County Department of Social Services. This sum represented a $192 rent allowance for four persons plus a $258 basic needs allowance for four persons. When in May of 1977 Thomas Gauck agreed to support his daughter Ann Marie, Ms. Roe notified the Monroe County Department of Social Services and requested that Ann Marie be removed from the grant. Ms. Roe was then advised that the family's public assistance grant would be reduced from $450 per month to $337.50 per month. The new figure was computed as three-quarters of a grant for four persons, i. e., three quarters of $450 = $337.50. Thus the Department of Social Services subtracted one fourth, $112.50, of the family's previous grant for four, and assigned that figure as Ann Marie's support that was provided by her father. This was done despite the fact that Thomas Gauck does not provide a fixed or regular amount of support to Ann Marie, but instead provides for her by purchasing clothing and other items that the child needs. Roe affid. at 4. Plaintiff argues that Ann Marie should not be included in her household and that the proper amount of her AFDC grant should be $381, consisting of a basic needs allowance of $200 for three persons plus a $181 rent allowance for three instead of three-quarters of the grant for a four person household.

Plaintiffs Swift and Roe argue for themselves and the remaining class members that defendants' policy of prorating family grants without proof of any actual income contribution by the independently supported child to the AFDC unit violates the SSA and federal implementing regulations because it incorporates a blanket assumption that a non-legally responsible individual is contributing to the AFDC household, or that his or her presence creates a reduced need due to economies of scale without an inquiry into the facts of the particular case.

## DISCUSSION

"Summary judgment is a harsh remedy to be granted only where there are no ma-terial issues of fact to be tried." *FLLI Moretti Cereali v. Continental Grain Co.,* 563 F.2d 563, 565 (2d Cir. 1977). The function of the court is not to try issues of fact but to determine whether those issues exist to be tried. *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). In so doing the court must resolve all ambiguities in favor of the non-moving party. *Id.* at 1320.

In the present case the material facts are not disputed; the court is asked to resolve, as a matter of law, the propriety of defendants' actions. Defendants do not deny that plaintiffs' grants were prorated as described above but contend that proration of a family grant on account of the presence of a self-maintaining child is proper under an economies of scale theory. They rely upon Bureau of Labor statistics [6] that reflect variations in per capita living costs according to changes of household size and contend that no attribution of income from the non-legally responsible individual to the AFDC household is involved. Rather, they state that "[a]ll that is assumed by the Department is that the economies of scale which are embodied in the standard of need will continue to operate regardless of the source of the child's sustenance." Cushing affid. at 7.

An argument similar to that of the present defendants was posed in *Houston Welfare Rights Organization, Inc. v. Vowell,* 555 F.2d 1219 (5th Cir. 1977), *cert. granted,* 434 U.S. 1061, 98 S.Ct. 1232, 55 L.Ed.2d 761 (1978). There plaintiffs challenged the state of Texas' Department of Public Welfare's policy of prorating shelter and utility expenses when a non-AFDC recipient shared a recipient's residence. Plaintiffs argued that the proration violated federal regulations and in particular 45 C.F.R. § 233.90(a) which deals with the administration of AFDC programs. Section 233.90(a) provides that when the amount of the assistance payment is calculated, only actually available net income, received on a regular basis, is to be considered; and that

---

6. *See* note 3 *supra.*

income of the parent only will be deemed available for children in the household absent proof of actual contributions.

The DPW, in answer to plaintiffs' claim, contended that its proration policy did not presume income to the AFDC recipient in contravention of section 233.90(a) but rather only a reduced need due to the nonrecipient's presumed contribution of funds to cover his own expenses, coupled with economies of scale achieved through group living. 555 F.2d at 1222–23. The court rejected this position and stated that the economies of scale argument implicitly presumed that the non-AFDC recipient's income was available to offset utility and shelter expenses. *Id.* at 1224. Thus, the court concluded, the "proration policy, in presuming that a recipient's need decreases when a nonrecipient resides in the household, violates federal regulations controlling state administration of AFDC programs because his need of assistance does not decrease unless the nonrecipient is paying his own way." *Id.*

45 C.F.R. § 233.90(a), relied upon in *Houston Welfare Rights Organization, Inc., supra,* and 45 C.F.R. § 233.20 were amended in 1977 after the decision in *Van Lare v. Hurley,* 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975). In *Van Lare* the Supreme Court invalidated a New York State regulation requiring shelter allowances of AFDC families to be reduced pro-rata when a non-legally responsible individual resided with the AFDC family. The Court determined that the proration regulations were invalid "insofar as they are based on the assumption that the nonpaying lodger is contributing to the welfare household, *without inquiry into whether he in fact does so.*" 421 U.S. at 346, 95 S.Ct. at 1747 (emphasis supplied). To conform to the Court's holding in *Van Lare* the AFDC implementing regulations now provide in relevant part:

§ 233.20 Need and amount of assistance.

(a) *Requirements for State Plans.* A State Plan for OAA, AFDC, AB, APTD or AABD must, as specified below:

\* \* \* \* \* \*

(2) Standards of assistance.

(iv) Include the method used in determining need and the amount of the assistance payment.

\* \* \* \* \* \*

(viii) *Provided that the money amount of any need item included in the standard will not be prorated or otherwise reduced solely because of the presence in the household of a non-legally responsible individual; and the agency will not assume any contribution from such individual for the support of the assistance unit.*

45 C.F.R. § 233.20 (1977) (emphasis supplied).

§ 233.90 Factors specific to AFDC.

(a) *State plan requirement.* A State plan under title IV–A of the Social Security Act must provide that the determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his father, will be made only in relation to the child's natural or adoptive parent, or in relation to the child's stepparent who is ceremonially married to the child's natural, adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children. Under this requirement, the inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income of the State; *nor may the State agency prorate or otherwise reduce the money amount for any need item included in the standard on the basis of assumed contributions from nonlegally responsible individuals living in the household. In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be*

*considered, and the income only of the parent described in the first sentence of this paragraph will be considered available for children in the household in the absence of proof of actual contributions.* 45 C.F.R. § 233.90 (1977) (emphasis supplied). As I indicated in an earlier decision in this action, *Swift v. Toia,* 450 F.Supp. 983, 989 (S.D.N.Y.1978), the comments of the Department of Health, Education and Welfare ("HEW") on the above regulations make perfectly clear that the regulations require a state, before reducing AFDC allowances pro-rata "to determine whether actual contributions have been made" to the AFDC recipients by the non-legally responsible individual residing in the AFDC home. 42 Fed. Reg. 6583.

Plaintiff Swift has submitted a sworn affidavit stating that at the New York State Department of Social Services Fair Hearing to review her prorated grant, no evidence was adduced that her self-sustaining son William was furnishing support or contributions to her, or that her needs had diminished due to his presence in the household. Swift affid. at 3. Indeed, the hearing transcript reveals that the Westchester County Department of Social Services justified the grant proration on the basis that *Van Lare v. Hurley's* prohibition against assuming that the non-legally responsible person's income is used to meet the needs of the AFDC household was inapplicable to a family group situation where the non-welfare child is in fact self-supported. This position appears to conflict, however, with HEW's comments concerning §§ 233.20 and 233.90. When four state agencies submitted that *Van Lare* and the regulations applied only to the "man-in-the-house" situations rather than to all shared households, HEW flatly rejected such a position and noted that it perceived "no basis for making a distinction between non-legally liable individuals depending on where the [AFDC] child's home is." 42 Fed. Reg. 6583.

Plaintiff Roe has also submitted a sworn affidavit concerning her fair hearing on her family's grant proration. It reveals that she testified, as noted above, that Ann Marie's father provides for the child's needs by purchasing her clothing and other necessary items; he does not provide a fixed monetary sum or a regular amount of support for her. At the hearing no evidence was introduced that Ann Marie was contributing to the AFDC household or that the needs of Ms. Roe and her other two daughters had diminished due to Ann Marie's presence. Roe affid. at 4. In the decision after fair hearing the grant proration was upheld without any findings of actual contribution to the AFDC household.

It is clear from the above that in neither instance did defendants make the requisite inquiry of whether the independently supported child's resources were actually contributed to the household. Without such a threshold determination, it is difficult, if not impossible, to understand how economies of scale come into play. If Mrs. Swift had been asked whether $144.66 of William's monthly support payment is pooled with the AFDC household money to absorb his share of food and shelter expenses, and if she answered in the affirmative, the defendants would have been perfectly justified in prorating her grant. At that point the federal regulations would have been satisfied,[7] and economies of scale would operate to reduce the overall cost of maintaining a three person household.

Turning next to Ms. Roe's factual situation, the lack of inquiry as to actual contribution to the household may result in genuine hardship to the AFDC recipients where the non-AFDC child is supported in kind rather than with funds. For example, if Ann Marie's father provides her monthly with actual items of food and clothing, but no monetary sum that is actually contributed to the AFDC unit, it is wholly artificial to maintain that the cost of running a four person household is reduced by one quarter, *i. e.,* $112.50 per month, Ann Marie's state determined total needs as one person of four. In such an instance reality dictates

---

7. HEW has stated that what constitutes "proof of actual contributions" is a determination to be made by state welfare agencies. 42 Fed. Reg. 6583.

that the remaining family members, the AFDC household of three, require a full shelter allowance for three people in addition to a basic needs allowance for three people.[8]

Over and above the two plaintiffs' situations, there are undoubtedly countless factual permutations among the class members where the non-AFDC child's support arrangement consists of support in kind only, or support which is given partially in kind and partially in funds, or simply support in whatever monetary amount an absent parent can spare on a monthly basis. The only way to ensure that the prorated amount of the non-AFDC child's per capita needs is actually available and contributed to the AFDC unit to cover the non-AFDC child's share of household expenses is to comply with sections 233.20(a) and 233.90(a) through inquiry in each instance. A similar determination has also been reached by other courts presented with proration issues in differing contexts. *See, e. g., Houston Welfare Rights Organization, Inc. v. Vowell, supra; Gurley v. Wohlegemuth,* 421 F.Supp. 1337 (E.D.Pa.1976) (two AFDC units residing in one household); *see also Reyna v. Vowell,* 470 F.2d 494, 497 (5th Cir. 1972) (SSA requires determination of whether earned income of resident 18–21 year old is contributed to household before reduction in AFDC benefits); *cf. Gilliard v. Craig,* 331 F.Supp. 587 (W.D.N.C.1971) *aff'd* 409 U.S. 807, 93 S.Ct. 39, 34 L.Ed.2d 66 (1972) (although no discussion of instant issue, *i. e.,* deduction from AFDC grant to extent of state determined standard of need for supported child, court determined that full amount of child's support could not be assumed available to AFDC unit). Finally, defendants' reliance on *Padilla v. Wyman,* 34 N.Y.2d 36, 356 N.Y.S.2d 3, 312 N.E.2d 149, *appeal dismissed,* 419 U.S. 1084, 95 S.Ct. 672, 42 L.Ed.2d 677 (1974) is not con-

sidered dispositive for the reasons stated in *Swift v. Toia,* 450 F.Supp. at 989–90.

In accordance with the above, plaintiffs' motion for partial summary judgment is granted. Defendants' practice or policy as outlined above conflicts with the discussed federal implementing regulations of the SSA and as such is violative of the supremacy clause of the constitution. Plaintiffs are directed to submit a judgment enjoining defendants from prorating the class members' AFDC grants without first determining whether the non-AFDC child's monthly support, in the amount of the per capita state determined standard of need, is actually available and contributed to the household to defray the non-AFDC child's share of household expenses.

SO ORDERED.

---

**8.** Defendants make much of the fact that Ms. Roe (a) lives in a building owned by Ann Marie's father and (b) testified at her fair hearing that Ann Marie's father provides Ann Marie with anything she actually needs and has purchased a washing machine and a freezer. These facts, standing alone, do not detract from plaintiffs' legal arguments. If Ann Marie is in

fact contributing to the AFDC household through her father's support obligations then the AFDC grant may and should be properly prorated. However, without such a preliminary determination (and defendants do not contend that they have made this determination), (a) and (b) above are irrelevant.