Itha David BECKER, Hannah M. Kneafsey, Plaintiffs,

v.

Barbara BLUM, as Commissioner of the New York State Department of Social Services, and Muriel O'Connor, as Commissioner of the Sullivan County Department of Social Services, Defendants.

No. 77 Civ. 2561 (VLB).

United States District Court, S. D. New York.

Feb. 13, 1980.

**874**

Mid-Hudson Legal Services, Inc. by David L. Posner, Monticello, N.Y., Greater Upstate Law Project by Rene Reixach, Rochester, N.Y., for plaintiffs.

S. Richard Gross, Social Services Atty., Liberty, N.Y., for defendant O'Connor.

Robert Abrams, Atty. Gen. of the State of New York, New York City by George D. Zuckerman, Asst. Sol. Gen., Anne Marsha Tannenbaum, Asst. Atty. Gen., New York City, for defendant Blum.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

This class action was filed in late May, 1977, seeking to enjoin defendants from implementing an amendment to New York law which would have required that medicaid recipients make "co-payments" with respect to purchases of prescription drugs and other medical services and supplies. Named as defendants were the Commissioner of New York State's Department of Social Services and the Commissioner of the Department of Social Services of Sullivan County ("Sullivan commissioner").

On June 23, 1977, I granted plaintiffs' motion preliminarily to enjoin the implementation and enforcement of the amendment. By memorandum order dated December 28, 1978 I granted partial summary judgment in favor of plaintiffs, and judgment was duly entered.

While defendants initially appealed from that judgment, one defendant has since withdrawn his appeal, and the appeal of the other was dismissed for failure to docket.

The case is now before me on plaintiffs' motion for interim attorney's fees. The defendants have opposed this application, in whole or in part, on various grounds, some of which I deal with herein.[1]

*Apportionment*

■ The Sullivan commissioner proposes that since the action taken by this court has impact with respect to class members throughout the state, any award of attorney's fees should be apportioned among all of the state's local social services departments. This proposal is unsupported by any authority. The injunction which was granted operates only against the named defendants. This court has no power to assess an award against non-parties.

*Reasonable Rates for Legal Services Attorneys*

The defendants have suggested that legal services attorneys should be paid, not at an hourly rate comparable to that of private attorneys, but at a rate which would reflect the legal services attorneys' generally lower salaries and overhead expenses.

---

1. To the extent that I have not dealt with defendants' grounds in opposition to plaintiffs' application, I reject them.

■ I reject this suggestion, *see Beazer v. NYCTA*, 558 F.2d 97, 100 (2d Cir. 1977), *rev'd on other grounds*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *Torres v. Sachs*, 538 F.2d 10, 13 (2d Cir. 1976). Attorney's fees awards have traditionally been measured by, *inter alia*, the value of the services performed. The value of legal services attorneys' services are not reflected by their salary; the disparities between the salaries of legal services attorneys and private practitioners "usually reflect the relative poverty of legal services funding." *Rodriguez v. Taylor*, 569 F.2d 1231, 1248 (3d Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). Legal services attorneys are paid (and accept) lower salaries in order that the limited funds available may generate the greatest possible volume of legal services for the needy. Since Section 1988 of Title 42 authorizes the award to the prevailing party of "a reasonable attorney's fee," the salaries paid to legal services attorneys do not furnish acceptable guideposts. "[T]o the extent salary levels are relevant, the appropriate referent would be comparable salaries earned by private attorneys with similar experience and expertise in equivalent litigation." (*Rodriguez v. Taylor, supra* at 1248).

■ The defendants have suggested that there be a pro-rata reduction in the award to reflect state and federal contributions to legal services. Defendants cite the Second Circuit decision in *Gagne v. Maher*, 594 F.2d 336, 345 (2d Cir. 1979), in support of this suggestion. The Court of Appeals in *Maher* upheld the district court's reduction of a fee award to the Legal Aid Society of Connecticut "to reflect the public contribution of federal funds" to the Society. In so deciding, however, the Court of Appeals clearly described the limits of its holding:

> Although such a reduction is not mandatory and we do not suggest that it be routinely done, see *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34 (2d Cir. 1978), the issue is committed to the sound discretion of the district court.

In the exercise of discretion, I decline to effect the reduction suggested by the defendants.

An award of attorney's fees in this case will not result in a windfall for legal services attorneys simply because they receive funding from other government sources. The award will not be used to increase the compensation to the attorneys, but will be used to expand the services being provided to the members of the public who qualify for such services.

Nor would an award in this case unjustly penalize the state defendants by making them doubly liable for the services provided for these clients. None of the legal services offices seeking compensation is funded by state or local government; their funding comes from the federal government. Even if legal services were wholly or in part financed by the state or local governments, future financing would depend upon the decisions of those government bodies. If they were to determine that funding should be reduced to reflect the amount of attorney's fees assessed against them, it would be entirely within their power to implement such a determination. Such a decision should, however, be made at the appropriate executive or legislative level and not by the federal courts, absent a clear mandate from Congress.

*The reasonableness of the attorney's fees sought by plaintiffs' attorneys*

The injunction issued herein prohibited the state from requiring Medicaid patients to make co-payments of $.50 with respect to purchases of prescription drugs and other medical services and supplies. Plaintiffs suggest that the benefit to the client class can be measured in monetary terms, since the state had estimated that the "co-payment" requirement would effect savings to the state amounting to millions of dollars each year. I make no finding as to the monetary benefit to the client class, since the relief sought was granted because the legislation requiring the co-payment was being implemented in violation of law, and not because its implementation would have an adverse monetary impact upon the client class. Plaintiffs have conceded throughout this litigation that state "co-payment" re-

quirements are authorized by federal law, and have only insisted that they be imposed in conformity with that law.

■ I do find, however, that in successfully seeking to enjoin the defendants from implementing "co-payment" without conforming to federal law plaintiffs' attorneys have rendered a valuable service to the client class. Plaintiffs' attorneys suggest that a "reasonable attorney's fee" requires their compensation at the rate of $75 per hour with respect to attorneys admitted to the bar for less than two years, and $90 per hour with respect to those admitted for more than two years. In my judgment those proposed rates of compensation understate the fees charged in this district by attorneys of comparable experience for legal work of comparable quality on problems of comparable complexity. Since it is what has been requested, however, I do not propose to award more, and find it reasonable. The legal work done by plaintiffs' counsel, as reflected in the quality of the case presented to me and in the results achieved, has been of an extremely fine calibre. There has been no unnecessary duplication of work by the various attorneys representing plaintiffs and by the attorneys who have provided backup assistance.

The following schedule constitutes my findings with respect to the time expended by the various legal services offices in rendering legal services to plaintiffs in this matter, and reasonable fees and expenses in connection with those services. Included is time spent in the preparation of the fee application.

#### Mid-Hudson Legal Services, Inc.

| | Amount |
|---|---|
| A. Attorneys' hours on prosecuting plaintiffs' claims | |
| Less than two years at bar – 174.75 hrs. ($75/hour) | $13,106.25 |
| Two or more years at bar – 57.75 hrs. ($90/hour) | 5,197.50 |
| | $18,303.75 |
| B. Attorneys' hours on prosecuting fee application | |
| Two years or more at bar – 36.25 hrs. ($90/hour) | $ 3,262.50 |
| | $21,566.25 |
| C. Expenses | $ 658.52 |
| TOTAL: | $22,224.77 |

#### Greater Upstate Law Project

| | |
|---|---|
| A. Attorneys' hours on prosecuting plaintiffs' claims | |
| Two years or more at bar – 93 hrs. ($90/hour) | $ 8,370.00 |
| B. Attorneys' hours on prosecuting fee application | |
| Two years or more at bar – 4 hrs. ($90/hour) | $ 360.00 |
| | $ 8,730.00 |
| C. Expenses | $ 593.43 |
| TOTAL: | $ 9,323.43 |

#### MFY, Inc.

| | |
|---|---|
| A. Attorneys' hours on prosecuting plaintiffs' claims | |
| Two years or more at bar – 143 hrs. ($90/hour) | $12,870.00 |
| C. Expenses | 350.00 |
| TOTAL: | $13,220.00 |

Plaintiffs are therefore awarded a total of $43,166.25 as attorneys' fees, and $1,601.95 as expenses, and defendants are directed to pay the total sum of $44,768.20 to the Mid-Hudson Legal Services, Inc., which will transmit $9,323.43 thereof to Greater Upstate Law Project, and $13,220 to MFY, Inc.

SO ORDERED.