Joanne SWIFT, individually and on behalf of her Minor Daughter, Michelle Swift, and on behalf of all other persons similarly situated, Plaintiffs,

Lylia Roe, Plaintiff–Intervenor,

v.

Barbara BLUM, individually and as Commissioner of the New York State Department of Social Services, et al., Defendants.

No. 77 Civ. 2425 (HFW).

United States District Court,
S. D. New York.

Nov. 12, 1980.

West Chester Legal Services, Inc., New Rochelle, N. Y., for plaintiffs; Eileen R. Kaufman, Martin A. Schwartz, White Plains, N. Y., of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendant Blum; Marion R. Buchbinder, Asst. Atty. Gen., New York City, of counsel.

## OPINION

WERKER, District Judge.

Plaintiff, Joanne Swift, individually, and on behalf of her minor daughter and on behalf of all persons similarly situated, brought this action pursuant to 42 U.S.C. § 1983 and directly under the fourteenth amendment, against defendants[1] seeking declaratory and injunctive relief as well as monetary damages.[2] The complaint alleges violation of plaintiffs' constitutional rights by defendants' policy of automatically prorating public assistance grants when an individual who has no legal obligation to support a family receiving Aid to Families With Dependent Children ("AFDC"), and who receives non-welfare income sufficient to meet his or her own needs, resides with an AFDC family.

Three prior opinions have been rendered in this suit with which reader familiarity will be presumed.[3] By judgment and order

---

1. Plaintiffs commenced this class action against Philip L. Toia, individually and as Commissioner of the New York State Department of Social Services and Charles W. Bates, individually and as Commissioner of the Westchester County Department of Social Services.

   By decision dated May 1, 1978, this court granted Maxine Cook and Lylia Roe's motion to intervene, permitting them to add as defendants the county commissioners of the departments of social services for their respective counties.

   Barbara Blum has since been appointed Commissioner of the New York State Department of Social Services and substituted for Philip Toia as a named defendant.

2. Plaintiffs have not pursued their claim for monetary damages.

3. In *Swift v. Toia*, 450 F.Supp. 983 (S.D.N.Y. 1978), this court denied defendants' motion for judgment on the pleadings, granted plaintiffs' motion for intervention and leave to amend, and denied plaintiffs' motion for class certification, without prejudice to renew.

   On June 20, 1978, the court granted plaintiffs' renewed motion for class certification, defining the class as follows:

   Persons who are residents of the State of New York, who are, were or will be recipients of AFDC and whose grants have been, are being, or are threatened to be reduced, modified or suspended pursuant to defendants' policy of prorating the public assistance grant when an individual who has no legal obligation to support the AFDC family and who receives non-welfare income sufficient

entered December 15, 1978, this court permanently enjoined defendants from enforcing their egregious policy without determining whether and in what amount the non–legally responsible individual is contributing to the AFDC household, or whether and in what amount his or her presence creates a reduced need for the AFDC household. *See Swift v. Toia,* 461 F.Supp. 578 (S.D.N.Y. 1978), *aff'd per curiam sub nom., Swift v. Blum,* 598 F.2d 312 (2d Cir. 1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 1025, 62 L.Ed.2d 658 (1980). This case presently is before the court on plaintiffs' motions for civil contempt, summary judgment for class–wide notice and attorneys' fees pursuant to 42 U.S.C. § 1988.

## CIVIL CONTEMPT

Plaintiffs contend that defendant Blum has failed to abide by this court's December 15, 1978 order by refusing to restore benefits to the date of judgment. In support of this claim, plaintiffs have submitted the sworn affidavits of AFDC recipients Carolyn Williams, and Rosemary Williams.

In the case of Carolyn Williams, the Westchester County Department of Social Services refused to restore her benefits prior to June 1, 1979. The county agency began prorating Ms. Williams' AFDC grant in June 1978 because of the presence in the household of two children receiving Social Security benefits. At a "fair hearing," a

county representative agreed to recompute Ms. Williams' grant in accordance with this court's order, but refused to restore the benefits wrongfully withheld before June 1, 1979. The county agency reached this decision in reliance on a letter dated November 7, 1979 from the Director of the Bureau of Upstate Field Operation wherein he advised that *Swift* was not to be applied prior to May 31, 1979, the date of administrative directive 79 ADM–26 which instructed local agencies as to the procedure to follow in complying with this court's order. C. Williams Affid. Exh. C, D. This determination was upheld by decision of defendant Blum dated December 17, 1979.

Defendant's policy of refusing to grant benefits retroactive to the date of entry of this court's order is further supported by the affidavit of Rosemary Williams. The Rensselaer County Department of Social Services has automatically prorated Ms. Williams' AFDC grant since October 1979. Despite a decision dated May 1, 1980 wherein defendant Blum directed the agency to recompute this grant, the agency has refused to restore benefits retroactive to October 1979. R. Williams Affid. Exh. A.

In addition to refusing to rebudget benefits retroactive to the date of judgment, plaintiffs claim that defendant has persisted in imposing automatic prorations pursuant to 18 N.Y.C.R.R. 352.31(a)(3) [4] in blatant disregard of this court's order.

to meet his or her needs resides with an AFDC family consisting of a parent or caretaker relative and at least one needy child. 77 Civ. 2425 slip op. (S.D.N.Y. June 20, 1978). By opinion dated November 30, 1978, this court granted plaintiffs' motion for partial summary judgment. 461 F.Supp. 578 (S.D.N.Y. 1978).

4. Section 352.31(a)(3) of the Regulations provided, in pertinent part:

When an applicant or recipient is living, other than on an occasional or transient basis, with a person to whom such applicant or recipient is not married, the available income and resources of such person shall be applied in accordance with the following
(i) When the person is willing, his or her available income and resources shall be applied in determining eligibility and degree of need.
(ii) When the person is willing to assume responsibility only for his or her own needs,

the needs of the applicant or recipient, and those children for whom such person is legally responsible, the available income or resources of such person shall be applied in *determining eligibility and degree of need of* those persons only; and assistance for any remaining children shall be provided on a *pro rata* basis.
(iii) When the person is willing to assume responsibility only for his or her needs, and the needs of those children for whom such person is legally responsible, the available income and resources of such person shall be applied in determining eligibility and degree of need of those persons only; and assistance for the applicant or recipient and remaining children shall be provided on a *pro rata* basis.
18 N.Y.C.R.R. 352.31(a)(3) was repealed March 31, 1980.

For example, the Ulster County Department of Social Services automatically prorated Geneva Ten Eyck's daughter's AFDC grant in September 1979. Relying on 18 N.Y.C.R.R. 352.31(a)(3), defendant Blum affirmed that agency's determination by decision dated January 10, 1980. Ten Eyck Affid. Exh. D. This occurrence was not unique; in September 1979, defendant Blum had affirmed yet another agency's determination insofar as it relied upon 18 N.Y.C.R.R. 352.31(a)(3) to automatically prorate an AFDC recipient's grant. T. Harris Affid. Exh. A.

Indeed, in the cases of *Anderson v. Blum*, 80 Civ. 8452 (Sup.Ct. Kings County March 31, 1980) and *Leone v. Blum*, 73 App.Div.2d 252, 425 N.Y.S.2d 836 (2d Dep't 1980), defendant has continued to defend its policy of automatic proration of AFDC grants because of the presence of self–maintaining individuals in AFDC recipients' households.

In the *Anderson* case, in February 1979, the New York City Department of Social Services automatically reduced Ms. Anderson's public assistance grant to a prorated budget after her son began receiving Social Security benefits. On April 24, 1979, at an administrative hearing to review this determination, Ms. Anderson testified that her son's benefits were used solely for his needs. Nevertheless, defendant Blum affirmed the agency's determination by decision dated July 12, 1979. Anderson Affid. Exh. A. Ms. Anderson appealed to the Supreme Court of the State of New York, Kings County which reversed defendant's decision, finding it "contrary to the holding in *Swift v. Toia*." Anderson Affid. Exh. B at 3. Notwithstanding an order and judgment commensurate with the Supreme Court's decision, as of June 1980, the Department of Social Services continued to prorate Ms. Anderson's AFDC grant.

Likewise, in *Leone v. Blum*, the Appellate Division of the New York Supreme Court, Second Department reversed the agency's determination to prorate, citing *Swift v. Toia*. 73 App.Div.2d at 272–73, 425 N.Y. S.2d at 849–50.[5]

### Discussion

■ A finding of civil contempt results from "a failure of a litigant to do something ordered to be done by a court in a civil action for the benefit of the opposing party therein." *Walling v. Crane*, 158 F.2d 80, 83 (5th Cir. 1946). However, "an order of contempt cannot issue unless the order claimed to be violated is specific and definite." *UFI Razor Blades, Inc. v. District 65, Wholesale Union*, 610 F.2d 1018, 1024 (2d Cir. 1979). Moreover, since the "disciplinary weapon [of civil contempt] is at the severe end of the spectrum ... a civil contempt order ... should only be imposed when there is clear and convincing proof of a violation of a court decree." *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, (2d Cir. 1980); see *NLRB v. Local 282, International Brotherhood of Teamsters*, 428 F.2d 994, 1001–02 (2d Cir. 1970). It is well settled that "the violation need not be wilful to evoke such a remedial determination." *Aspira of N.Y., Inc. v. Board of Education*, 423 F.Supp. 647, 653–54 (S.D.N.Y. 1976); accord, *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). The relevant question is "whether defendants have been reasonably diligent and energetic in attempting to accomplish what was ordered." *Aspira of N.Y., Inc.*, 423 F.Supp. at 654.

■ Applying these principles to the facts herein, I find defendant's conduct falls woefully short of the required due diligence and indeed constitutes blatant disregard of this court's specific order.

---

**5.** While the Commissioner's decision in *Leone* predated this court's order and thus cannot be cited as contempt in itself, a continued reliance by defendant Blum on arguments rejected by this court two years previously to justify the automatic proration of Ms. Leone's grant provides a basis for the court's finding of contempt.

The court has also considered a recent decision of defendant Blum dated September 22, 1980 which further supports plaintiffs' claim for a finding of contempt based upon continued automatic proration of benefits. Kaufman Affid., sworn to Oct. 29, 1980, Exh. A.

As noted above, the judgment of this court entered on December 15, 1978 clearly enjoined defendant Blum from automatically prorating AFDC grants without inquiring whether the self–maintaining individual's income is combined with the AFDC grant and is utilized to meet this individual's full share of the household needs. Defendant seeks to avoid being held in civil contempt by claiming that the judgment did not specifically direct that benefits were to be rebudgeted as of the date of judgment and that furthermore, any errors made with respect to members of the class were rectified by notice to county agencies to restore benefits to three specific recipients aggrieved by incorrect decisions. Cushing Affid. ¶¶ 24, 25.

In support of its claim of due diligence in complying with this court's order, defendant focuses on two mailgrams of January 10, 1979 and May 16, 1979 and administrative directive 79 ADM–26 issued on May 31, 1979 which were sent to all local social service commissioners. Cushing Affid. Exhs. 1, 6; C. Williams Affid. Exh. D.[6] There can be no doubt that the administrative directive clarified the terms of the judgment in an effort to assist local agencies by providing a guideline as to procedures to be followed in complying with the court's order. What the court finds most offensive, however, is defendant's position with respect to retroactive restoration of benefits that were wrongfully denied in violation of the court's order. Any rebudgeting of benefits, defendant maintains, should "be made retroactive to the date [the] budgeting arrangement was instituted, but not prior to the date of the administrative directive." Defendant's Memo. at 7.

Defendant attempts to justify this position by characterizing the judgment as unclear and ambiguous because it contained "no provision regarding the manner of implementation." Defendant's Memo. at 11. I find this argument to be unavailing. The judgment entered by this court on December 15, 1978 was effective as of that date. The manner of implementation was left to the parties with the advice of the court.[7] Defendant's assertion to the contrary as to the applicable retroactive date for restoration of benefits is in flagrant disregard of the mandate of this court.

Furthermore, defendant's contention that any incorrect decisions have been rectified and thus should not supply a basis for a finding of contempt is unpersuasive. Admitting that defendant Blum erred in her decision of December 17, 1979 upholding the local agency's determination to restore benefits to Carolyn Williams retroactive only to the date of the administrative directive, defendant's representative asserts that he has directed the agency to correct the error. Likewise, in the cases of Geneva Ten Eyck and Theresa Harris, there is a representation that the effects of decisions rendered subsequent to the court's order which incorrectly relied upon 18 N.Y.C.R.R. 352.31(a)(3) have been rectified. Cushing Affid. ¶¶ 24, 25.

Taking corrective action in three cases, however, cannot cloak defendant with a mantle of due diligence. Defendant has failed to persuade this court that the statewide policy of not restoring benefits retroactive to the date of judgment has been corrected for any class member other than Carolyn Williams. Indeed, as noted above,

---

**6.** The January 10, 1979 mailgram notified all local service commissioners of the entry of judgment and the contents of the December 15, 1978 order. On May 16, 1979, another mailgram was sent to all local commissioners advising them of the Second Circuit's affirmance of this court's decision. The administrative directive dated May 31, 1978, provided the local commissioners with guidelines to follow in complying with the court's order.

**7.** Several conferences before the court were held in an attempt to ensure defendant's compliance with the court's mandate. Specifically, at a conference held on February 1, 1980, I ruled that any rebudgeting found to be necessary to comply with the December 15, 1978 order was to be retroactive to that date. At a conference held on March 28, 1980, I set May 2, 1980 as an absolute firm date by which defendants were ordered to correct all non–compliance problems including those cases where defendant had refused to restore benefits retroactive to December 15, 1978.

defendant persists in maintaining that rebudgeting should only be retroactive to the date of the administrative directive. Furthermore, although defendant may have directed corrective action in the cases of Geneva Ten Eyck and Theresa Harris, this clearly cannot remedy the wrong imposed on other AFDC families which have had their grants illegally reduced because of defendant's persistent reliance upon a regulation of statewide applicability which had been enjoined by this court's order of December 15, 1978.[8]

Moreover, an attempt by defendant to avoid her obligation to comply with the court's mandate by shifting the responsibility to the county commissioner will not be countenanced by this court. The state commissioner is responsible, pursuant to statute, for the actions of the county commissioners. New York Soc. Serv. Law § 34 (McKinney 1976); *see Beaudoin v. Toia*, 45 N.Y.2d 343, 347, 380 N.E.2d 246, 248, 408 N.Y.S.2d 417, 419 (1978).

For the above reasons, I conclude that defendant was not "reasonably diligent" in attempting to comply with the December 15, 1978 order. Thus, the question remaining is the appropriate remedy for defendant's civil contempt.

■ "Generally, the sanctions imposed after a finding of civil contempt serve two functions: to coerce future compliance and to remedy past noncompliance." *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979) (citations omitted). The court "is vested with wide discretion in fashioning a remedy" in furtherance of the former purpose. *Id.* In contemplation of imposing a fine or other sanction in order to coerce defendant into future compliance, this court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired" in addition to

"the consequent seriousness of the burden to that particular defendant." *United States v. United Mine Workers*, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). I decline to punish defendant for her failure to achieve compliance by imposing a fine for every fair hearing decision rendered by defendant Blum prior to the date of this opinion that fails to comply with this court's order as requested by plaintiffs. However, in view of the numerous conferences held before this court during the eighteen months following the entry of judgment at which defendant was repeatedly cautioned, warned and ordered to both restore benefits to the date of judgment and cease relying on Section 352.-31(a)(3) and defendant's failure to comply,[9] the court is compelled to assess a $1,000 fine for each fair hearing decision by defendant Blum rendered thirty days subsequent to the filing of this opinion which fails to comply with the December 15, 1978 order and does not provide for restoring wrongfully withheld benefits retroactive to that date.

To remedy defendant's past noncompliance, this court "is not free to exercise its discretion and withhold an order in civil contempt awarding damages . . . ." *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d at 130. "The sanction is employed not to vindicate the court's authority but to make reparation to the injured party . . . ." Thus, defendant Blum is ordered to restore benefits wrongfully denied to any member of the plaintiff class retroactive to December 15, 1978, and to pay plaintiffs' reasonable costs and attorneys' fees for the prosecution of this motion. Defendant Blum is further ordered to issue an administrative directive to all local social services agencies in accordance with this opinion.

### SUMMARY JUDGMENT FOR CLASS–WIDE NOTICE

It is clear that no genuine issue of material fact exists before this court with re-

---

8. As noted above, 18 N.Y.C.R.R. 352.31(a)(3) was repealed March 31, 1980, fifteen months after defendants were enjoined from automatically pro–rating AFDC grants pursuant to that regulation.

9. See note 7, *supra*.

spect to plaintiffs' motion for final judgment requiring defendant Blum to provide class–wide notices pursuant to *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Indeed, defendant has failed to file a 9(g) statement in accordance with the local rules of this court, and only summarily opposes this motion in her papers submitted in opposition. Accordingly, to ensure that the class members receive the benefits that were wrongfully denied them, defendant is ordered to send an explanatory notice to members of the plaintiff class advising them of the decision in this case and of the administrative procedures available by which they may receive a determination of eligibility for retroactive benefits. *Id.* at 334, 99 S.Ct. at 1141.

## ATTORNEYS' FEES

Attorneys for plaintiffs seek an order pursuant to 42 U.S.C. § 1988, awarding attorneys' fees. They request the court to fix the amount of such fees at $55,236.38 and the amount of costs and disbursements at $896.39, for a total of $56,132.77.

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizes the court to award a "reasonable attorney's fee" to a "prevailing party" in actions brought pursuant to 42 U.S.C. § 1983.[10] The Supreme Court recently has made it clear that a plaintiff who prevails on a Social Security Act claim may recover fees pursuant to section 1988. *Maher v. Gagne*, —— U.S. ——, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Maine v. Thiboutot*, —— U.S. ——, 100 S.Ct. 2502, 2506–07, 65 L.Ed.2d 555 (1980).

Defendants do not contest plaintiffs' entitlement to attorneys fees, but rather claim that the award sought is excessive in that (a) the requested hourly rate is exorbitant; (b) the hours are duplicative; (c) the incentive award in excess of the "lodestar" figure is unwarranted; and (d) a portion of the costs are not reimbursable.

### Hourly Rate

■ The amount of attorneys fees awarded is committed to the sound discretion of the trial judge. *Holley v. Lavine*, 605 F.2d 638, 646 (2d Cir. 1979), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980). The starting point in the determination of a fee award is calculation of the time the attorney has expended on the case multiplied by an hourly rate which is determined by the "amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470–71 (2d Cir. 1974) (*"Grinnell I"*). The result of that computation is a "lodestar" figure.

■ Reasonable hourly rates are determined by looking to the rates customarily charged in the community for similar services, "without regard to the non–profit or 'public interest' nature of the legal work" provided by plaintiffs' counsel. *Beazer v. New York City Transit Authority*, 558 F.2d 97, 100 (2d Cir. 1977), *rev'd on other grounds*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 1355 (1979).

Plaintiffs have requested attorneys' fees for five lawyers in the following amounts: for Martin A. Schwartz, an attorney with 12 years of experience in legal services for the poor, 71.75 hours at $125 per hour, totaling $8,968.75; for Marianne Artusio, with 9 years of experience, 12.75 hours at $125 per hour, totaling $1,593.75; for Eileen Kaufman, with 4 years of experience, 324.92 hours at $80 per hour, totaling $25,993.60; for Steven Hitov, with 3 years experience, 86.25 hours at $80 per hour, totaling $6,900; and for David Posner, with 4 years experience, 9.17 hours at $80 per hour, totaling $733.60. The "lodestar" total for all five attorneys is $44,189.70.

■ Mindful of the Second Circuit's admonition that attorneys' fee applications be

---

10. 42 U.S.C. § 1988 provides in pertinent part:
    In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

scrutinized "with an 'eye to moderation,' seeking to avoid either the reality or the appearance of awarding 'windfall fees,'" *Beazer v. New York City Transit Authority*, 558 F.2d at 101, citing, *Grinnell I*, I find that the hourly rates requested are high for this litigation. Although fees charged by private counsel is a factor considered by this court, so also are the difficulty of the issues presented, the skill requisite to perform the legal services properly, and awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

■ The issues in this action were not unusually complex, and although the legal work performed by plaintiffs' counsel, as reflected in the quality of the case presented to me and in the results achieved, has been of high calibre, it is my judgment that the proposed rates of compensation are excessive when compared to fees awarded in this district to attorneys with comparable experience for legal work of comparable quality on problems of comparable complexity. *Compare Sharrock v. Harris*, 489 F.Supp. 913 (S.D.N.Y. 1980) ($75 for 12 years experience; $50 for 7); *Becker v. Blum*, 487 F.Supp. 873 (S.D.N.Y. 1980) ($90 for more than 2 years experience; $75 for less than 2 years); *Mid–Hudson Legal Services v. G & U, Inc.*, 465 F.Supp. 261 (S.D.N.Y. 1978) ($80 for more than 7 years experience; $70 for 4–6 years; $55 for up to 3 years) *with Rodriguez v. Bernstein*, 79 Civ. 1294 (S.D.N.Y. April 21, 1980) ($110 for 10 years experience; $65 for 4 years experience).

Accordingly, I conclude that an award based on hourly rates of $100 per hour for Mr. Schwartz and Ms. Artusio and $75 per hour for Ms. Kaufman, Mr. Hitov and Mr. Posner is appropriate.

### Number of Hours

Plaintiffs have supported their application for attorneys' fees with detailed affidavits outlining services rendered and time expended. Defendants contend that the time expenditures are both excessive and in some cases duplicative. Specifically, defendants urge the court to find that the time spent by plaintiffs' counsel in preparation of a memorandum in support of summary judgment was unwarranted since the argument therein was "lifted practically verbatim from the argument" in another memorandum submitted in this case. The court is unpersuaded by defendants' protestations. The fact that similar legal arguments have been propounded in other briefs does not itself render the time requested excessive. *Population Services International v. Carey*, 476 F.Supp. 4, 10–11 (S.D.N.Y. 1979). Defendants' arguments with respect to duplication of effort are likewise unpersuasive. As noted in *Cintron v. Brentwood Union Free School*, 77 Civ. 1310 (E.D.N.Y. Feb. 6, 1979), a case relied upon by defendants, "the mere fact that services were rendered by more than one attorney on the same day does not necessarily mean that they were duplicative." Slip op. at 11. Thus, the court concludes that the amount of time expended by plaintiffs' counsel in this matter is reasonable.[11]

### Bonus Fee

Plaintiffs maintain that the "lodestar" figure should be adjusted upward by 25% "to reflect the quality of the work performed, the expertise and experience of counsel, the importance of the issues and the breadth of the relief obtained by the state–wide class." Plaintiffs' Memo at 9.

The court is mindful that the complexity of the legal issues and benefit to the class "are important considerations in any award of attorneys' fees above an hourly rate." *Beazer v. New York City Transit Authority*, 558 F.2d at 100, citing, *Grinnell I*, 495 F.2d at 470. However, while the final fee award should reflect the skill required to bring about the results achieved as well as the complexity of issues presented, the court also notes that the skill of plaintiffs' counsel is already reflected in the billing rate

---

11. To the extent that I have not dealt with defendant's claims regarding the number of hours expended by plaintiffs' attorneys, I reject them.

and the complexity of the case was considered in approving the number of hours expended. Moreover, the court has been guided by the Second Circuit's caution to scrutinize attorneys' fees requests with "an eye to moderation" to avoid "windfall fees." *Beazer v. New York City Transit Authority*, 558 F.2d at 101.

### Costs

Defendants challenge plaintiffs' counsel's claim for transportation costs, telephone and telegram charges as well as travel expenses as not recoverable since they are not specifically authorized by 28 U.S.C. § 1920 as taxable costs. I disagree. Numerous courts have found that merely because these costs are not itemized in section 1920 does not preclude this court from assessing these disbursements since "[c]ourt costs not subsumed under federal statutory provisions normally granting such costs against the adverse party ... are to be included in the concept of attorneys' fees." *Fairley v. Patterson*, 493 F.2d 598, 606 n.11 (5th Cir. 1974); *see Northcross v. Board of Education*, 611 F.2d 624, 639 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Population Services International v. Carey*, 476 F.Supp. 4, 8 (S.D. N.Y. 1979). Moreover, the legislative history of section 1988 indicates that attorneys' fees "would include ... all incidental and necessary expenses incurred in furnishing effective and competent representation." 122 Cong.Rec. 35,123 (1976). Thus, the court finds that such costs may be awarded to plaintiffs' counsel.

### CONCLUSION

Accordingly, plaintiffs' motions for civil contempt and summary judgment for class–wide notice are granted. Plaintiffs' motion for attorneys' fees is also granted to the extent that the State defendant is directed to pay plaintiffs' counsel's fees based on an hourly rate of $100 per hour for Mr. Schwartz and Ms. Artusio and $75 per hour for Ms. Kaufman, Mr. Hitov and Mr. Posner, plus costs and disbursements in the amount of $896.39.

SO ORDERED.