951 F.2d 362
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Curtis SNEEDE, by his guardian ad litem Georgia Thompson;
Justin Thompson, by his guardian ad litem Georgia Thompson;
Georgia Thompson, on her own behalf and as representative of
her sons Curtis Sneede and Justin Thompson, Plaintiffs-Appellees,
v.
Kenneth KIZER, Director, California Department of Health
Services; California Department of Health Services; Jesse
R. Huff, Director, California Department of Finance;
California Department of Finance,
Defendants-third-party-plaintiffs-Appellants
Curtis SNEEDE, by his guardian ad litem Georgia Thompson;
Justin Thompson, by his guardian ad litem Georgia Thompson;
Georgia Thompson, on her own behalf and as representative of
her sons Curtis Sneede and Justin Thompson, Plaintiffs-Appellees,
v.
Kenneth KIZER, Director, California Department of Health
Services; California Department of Health Services; Jesse
R. Huff, Director, California Department of Finance;
California Department of Finance, Defendants-Appellants,
v.
Louis W. SULLIVAN, M.D., Secretary, United States Department
of Health & Human Services; Department of Health
& Human Services, Third-party-defendants.
Curtis SNEEDE, Plaintiff,
v.
Kenneth KIZER; California Department of Health Services;
Defendants-third-party-plaintiffs-appellees,
v.
Louis W. SULLIVAN, M.D., Secretary, United States Department
of Health and Human Services,
Third-party-defendant-Appellant.
 Nos. 90-15141, 90-16143, 90-16144 and 90-16295.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 22, 1991.
Decided Dec. 13, 1991.
 
 Before D.W. NELSON, CYNTHIA HOLCOMB HALL and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 On January 5, 1990, the District Court for the Northern District of California enjoined the California Department of Health Services ("DHS") from enforcing a method of determining whether medically needy applicants qualify for Medi-Cal. The court found that the method employed improperly attributed income and resources to Medi-Cal applicants and recipients, in violation of 42 U.S.C. § 1396a(a)(17)(D). Sneede v. Kizer, 728 F.Supp. 607 (N.D.Cal.1990). Pursuant to the court's order, the DHS submitted a revised eligibility plan, which the court accepted in part and rejected in part in its order of June 8, 1990.
 
 
 3
 The DHS, joined by the Secretary of Health and Human Services ("HHS"), appeals the district court's June 8 ruling that the prorated "needs" standard of the revised eligibility plan violated § 1396a(a)(17)(D). The DHS and the Secretary also appeal that portion of the court's order proposing an alternative "needs" standard that would conform to the requirements of subsection (17)(D).[1]
 
 
 4
 The district court had jurisdiction pursuant to 18 U.S.C. §§ 1331 and 1361. This court has jurisdiction under 18 U.S.C. § 1291(a)(1). We affirm the district court's ruling that the DHS's prorated "needs" standard violates § 1396a(a)(17)(D). Because the district court did not require the DHS to adopt the court's proposed alternative plan, we have no occasion to address the propriety of that plan. Finally, we deny appellees' request for attorneys fees.
 
 
 5
 * Pursuant to the district court's January 5 order requiring the DHS to comply with 42 U.S.C. § 1396a(a)(17)(D), the DHS presented to the court a revised method for determining the income and need of each Medi-Cal Family Budget Unit ("MFBU"). For the purposes of determining eligibility and income, the DHS proposed that each MFBU be broken into sub-units, called Mini Budget Units ("MBUs"), to prevent attribution of income in violation of subsection (17)(D). Depending on family relationships and whether a child had separate income or property of her own, the DHS would create as many MBUs as necessary. Thus, a child with income would always be in a separate filing unit, as would stepchildren and mutual children of unmarried parents. Income would then be calculated separately for each MBU. Spousal and parental income would be allocated equally between the spouse or parent and those individuals for whom he or she is financially responsible. The district court accepted this aspect of the DHS's proposed alternative to the invalidated policy.
 
 
 6
 But the court rejected the DHS's proposed method for assessing an applicant's need. Under the pre-January 5 procedure, need would be determined by comparing the income of the MFBU to the "needs" standard, referred to as "Medically Needy Income Levels" ("MNIL"). Under the revised procedure proposed by the DHS, even though eligibility would be determined by the income of the MBU, need would not be assessed by comparing that income to the MNIL for that size MBU. Instead, the income of the MBU would be compared to an MNIL prorated across the MFBU. So, for example, the MNIL for an MBU of one carved out of an MFBU of four would not be $600, but $1100 divided by 4, or $275. The district court found this method of determining need invalid because it would permit "deeming" in violation of subsection (17)(D). June 8, 1990 Order at 8. The court rejected on similar grounds the state's argument that it was merely accounting for economies of scale. Id. at 8-9.
 
 
 7
 Suggesting an alternative approach, the court held that prorating would be permissible so long as it was based only on persons who were financially responsible for the applicant under subsection (17)(D). June 8 Order at 17. The court then ordered DHS and the plaintiffs
 
 
 8
 to devise a needs methodology that is consistent with section (17)(D) in that:
 
 
 9
 (1) it takes into account the applicant's needs in light of all persons who are financially responsible for the applicant under § 1396a(a)(17)(D)--whether included in the MFBU or not, but
 
 
 10
 (2) does not reduce the needs standard based on the presence of persons in the household who are not financially responsible for the applicant under § 1396a(a)(17)(D).
 
 
 11
 June 8 Order at 17-18.
 
 II
 
 12
 The interpretation of a statute is a question of law that this court reviews de novo. Vance v. Hegstrom, 793 F.2d 1018, 1022 (9th Cir.1986). Under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984), federal courts must accord proper deference to the Secretary's interpretation of the Medicaid statute. A court need not defer to an agency's interpretation if the construction violates an unambiguous statutory command; but deference is appropriate if the statute is ambiguous or unclear and the agency's interpretation is based on a reasonable construction of the statute. Id; see also Citizens Action League v. Kizer, 887 F.2d 1003, 1007 (9th Cir.1989) (citing Chemical Mfrs. Ass'n v. Natural Resources Defense Council, 470 U.S. 116, 125 (1985)), cert. denied, 110 S.Ct. 1524 (1990)).
 
 III
 
 13
 Appellants DHS and the Secretary present us with two arguments why the court erred in holding that the DHS's proration plan violated 42 U.S.C. § 1396a(a)(17)(D). We reject both.
 
 
 14
 * Appellants first contend that subsection (17)(D) "restricts only the method states use for calculating available income, not the method used to determine need standards against which that available income is measured." They argue that because available income is not taken into account in determining the MNIL, the proration plan does not "deem" in violation of subsection (17)(D).
 
 
 15
 The district court properly rejected this argument. A court owes no deference to an agency's interpretation of a statute when the statute is unambiguous. See Chevron, 467 U.S. at 842-43. Subsection (17) provides that a participating state must develop a plan for medical assistance that
 
 
 16
 include[s] reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ... (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or ... is blind or permanently and totally disabled,....
 
 
 17
 42 U.S.C. § 1396a(a)(17) (emphasis added).
 
 
 18
 The statute unambiguously applies to standards for determining "eligibility" and the "extent of medical assistance." Because both eligibility and the amount of benefits received are determined by the needs standard employed, see Morris by Simpson v. Morrow, 783 F.2d 454, 462 (4th Cir.1986) (eligibility for Medicaid benefits "may be ascertained only when the amount produced by the [MBU] methodology is compared against the [MNIL] standard"), subsection (17)(D) clearly applies to both income determination and needs assessment.
 
 B
 
 19
 Next Appellants claim that the DHS's proposed proration policy does not impermissibly assume the availability of income, but merely takes into account that the amount of money needed to satisfy a recipient's needs is diminished because of the economies of scale associated with group living. As the DHS argues, "[p]rorating of the MNIL among mini-budget units within a family simply reflects the 'common sense proposition that individuals living with others usually have reduced per capita costs because many of their expenses are shared.' " (quoting Bowen v. Gilliard, 483 U.S. 587, 599 (1987) (internal citation omitted)).
 
 
 20
 The district court properly found that the proration proposal did in fact lead to deeming, because "the State is implicitly assuming that household members not financially responsible for the applicant are contributing to the applicant's living expenses and thus reducing the applicant's level of need--without inquiring into whether such contributions actually are made." June 8 Order at 8. As the court recognized, the economies of scale argument
 
 
 21
 is premised on the assumption that contributions from members of the household that are not financially responsible for the applicant are nonetheless actually benefitting [sic] the applicant by reducing the amount of income/resources that [the] applicant needs for non-medical essentials. This is exactly the assumption that section (17)(D) does not allow the State to make.
 
 
 22
 Id. at 8-9; accord Van Lare v. Hurley, 421 U.S. 338, 346 (1975); Houston Welfare Rights Org., Inc. v. Vowell, 555 F.2d 1219, 1224 (5th Cir.1977), rev'd on other grounds sub nom. Chapman v. Houston Welfare Rights Org., Inc., 441 U.S. 600 (1979); Swift v. Toia, 461 F.Supp. 578, 581-82 (S.D.N.Y.1978), aff'd sub nom. Swift v. Blum, 598 F.2d 312 (2d Cir.1979) (per curiam), cert. denied, 444 U.S. 1025 (1980); Gurley v. Wohlgemuth, 421 F.Supp. 1337, 1347 (E.D.Pa.1976).
 
 
 23
 Appellants seek to distinguish these decisions by pointing out that each involved proration based on the presence of individuals from outside the family unit, while California "only prorates on the basis of the number of persons in the assistance unit" and does not deem any income or contributions from outside that unit. Secretary's Opening Brief at 8. As the district court found, however, subsection (17)(D) does not distinguish between members of the filing unit and those outside the unit. See Olson v. Norman, 830 F.2d 811, 817 (8th Cir.1987); Vance, 793 F.2d at 1024. Moreover, because, as Appellants concede, a filing unit must be defined as an MBU to avoid running afoul of subsection (17)(D), any contributions from non-responsible family members would result in deeming from "outside" the unit. Finally, the Ninth Circuit has twice held that by reducing needs standards to reflect the fact that a public assistance recipient lives with a non-financially responsible relative, states engage in prohibited deeming. See Beaton v. Thompson, 913 F.2d 701, 704 (9th Cir.1990); McCoog v. Hegstrom, 690 F.2d 1280, 1287 (9th Cir.1982).
 
 IV
 
 24
 Appellants also contend that the district court's suggested methodology for determining the MNIL conflicts with both 42 U.S.C. § 1396b(f), the "Federal Financial Participation" cap, as well as with 42 U.S.C. §§ 1396a(a)(10)(C) and 1396a(a)(17). We decline to reach these questions. The district court never ordered appellants to adopt the methodology it outlined. Rather, it "invite[d] [DHS] to devise a needs methodology that is consistent with section (17)(D)" and suggested, in broad terms, what such a methodology might require. See June 8 Order at 17-18. The court recognized that its proposal might "present problems not envisioned by the Court" and admonished that "further exploration is warranted." Id. at 18. Because the court did not require DHS to adopt its methodology, we have no occasion to review that aspect of the court's order.
 
 V
 
 25
 Lastly, we address Appellee's request for attorneys fees against state Appellants, pursuant to 42 U.S.C. § 1988, and against federal Appellants, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(b) and (d). We deny both requests. Section 1988 permits a court to award attorneys fees in actions brought to enforce section 1983 and other specific civil rights laws. See 42 U.S.C. § 1988 (1988). This action was not brought under any of those laws and so Appellees have no remedy against state Appellants under section 1988. It follows, therefore, that Appellees also have no remedy against federal Appellants under section 2412(b). See Lauritzen v. Lehman, 736 F.2d 550, 553-59 (9th Cir.1984) (fees available under section 2412(b) for civil rights violations only when fees would be available under a pre-existing statute). Finally, we decline to award fees under section 2412(d) because the Secretary's position had a reasonable basis in law and fact, and thus was "substantially justified" for the purposes of that statute. See Pierce v. Underwood, 487 U.S. 552, 565 (1988).
 
 VI
 
 26
 For the reasons expressed above, the order of the district court rejecting the DHS's proposal for determining MNIL's is
 
 
 27
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 DHS initially also sought review of the court's January 5 order, but has apparently abandoned that appeal. Thus, the only issue presently before this court is the propriety of the June 8 order