ASSOCIATION FOR RETARDED CITI-
ZENS OF NORTH DAKOTA, et
al., Plaintiffs,

v.

Allen I. OLSON, Governor of the State
of North Dakota, et al., Defendants.

Civ. No. A1–80–141.

United States District Court,
D. North Dakota,
Southwestern Division.

Nov. 19, 1982.

Michael J. Williams, Bismarck, N.D., Mary Deutsch Schneider, Legal Assistance of N.D., Fargo, N.D., for plaintiffs.

Robert O. Wefald, Atty. Gen., Bismarck, N.D., Rick D. Johnson, Daniel L. Hovland, Asst. Attys. Gen., Albert A. Wolf, Sp. Asst. Atty. Gen., Bismarck, N.D., for defendants.

VAN SICKLE, District Judge.

## MEMORANDUM and ORDER

The principal trial having been completed and an order issued thereon, plaintiffs moved for attorneys fees and costs, and, in addition, have moved that the interim grant

of attorneys fees made in that Order filed December 16, 1981, be increased. In response to that motion the defendants moved that plaintiffs be denied fees, and, further, that defendants be granted attorneys fees from plaintiffs. A comparison of the fees claimed by the plaintiffs and those claimed by the defendants is attached as Appendix I.

The basic law relevant to these issues is:

A. 42 U.S.C. § 1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

B. 42 U.S.C. § 1988:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or Title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

C. Rule 68 Fed.R.Civ.P. provides that:

At any time more than 10 days before the trial begins, ... a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for ... the effect specified in his offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Thus our first three questions are:

1. Who is the prevailing party?
2. What is the relationship between 42 U.S.C. § 1988 and Rule 68 of the Federal Rules of Civil Procedure?

3. Do "costs" as used in Rule 68 Fed.R. Civ.P. include attorney's fees?

... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs. 42 U.S.C. § 1988.

■ The "discretion" of the court is a judicial, not a personal discretion. As the Eighth Circuit said in a footnote;

It is worth recalling that Congress, not the courts, has made the decision to impose lawyers' fees on the losing side in civil-rights and other limited types of cases. The so-called American rule, which was judge-made law, left the burden of litigation unshifted: each side paid its own lawyers. Section 1988, enacted in 1976, is a statutory exception to the American rule. The people's elected representatives in Congress evidently felt that those who violate constitutional rights should pay for the legal services required to redress the violation. Our task as judges is to carry out this legislative command. *Avalon Cinema Corporation v. Thompson,* 689 F.2d 137 (8th Cir. 1982).

Appellate courts constantly hold it is an abuse of discretion to deny attorney's fees to a successful civil rights plaintiff without a finding of unusual circumstances. See *Employed Wkrs. Organizing Com. v. Batterton,* 477 F.Supp. 509 (D.C.Md.1979).

■ I find that plaintiffs were the "prevailing parties." The plaintiffs did, at the conclusion of the trial, obtain an order which imposed upon the defendants an obligation under the law to alter materially the scope and direction of the care of the retarded plaintiffs. Whether this result was obtained by negotiation and settlement, or by ruling; and whether the result reflected the good faith motivations of the defendants are not determinative. The key issue is the provocative role of the plaintiffs' lawsuit.*

* As to negotiation: See *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980), and *Rev. E.Z. Charles, et al. v.*

Granted that plaintiffs are the prevailing parties, does the offer of judgment presented to the plaintiffs, pursuant to Rule 68, Fed.R.Civ.P., affect plaintiffs' entitlement to attorneys fees?

■ It is well established that the Federal Rules of Civil Procedure have the force of a federal statute. *Sibbach v. Wilson & Co.,* 312 U.S. 1, 13, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1940). Thus, the only question is whether Rule 68, Fed.R.Civ.P. and 42 U.S.C. § 1988 can be interpreted so as to comply with the duty of the courts to:

> ... adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions. *Heiden v. Cremin,* 66 F.2d 943 (8th Cir. 1933), *Roadway Express, Inc. v. Piper,* 447 U.S. 752 [100 S.Ct. 2455, 65 L.Ed.2d 488] (1980).

So where, as here, the plaintiffs are the prevailing parties, the effect of an offer of judgment made under Rule 68, Fed.R.Civ.P. must be to reduce the entitlement to "costs" that the plaintiffs have otherwise earned, if in fact the offer of judgment is as favorable as the judgment finally obtained.

■ 42 U.S.C. § 1988 recites that attorneys fees shall be taxed as part of the "costs." I conclude that "costs" as used in Rule 68 means "costs" exclusive of attorneys fees. In this matter I am persuaded by the reasoning of *Roadway Express, Inc., v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). That is, Rule 68 was drawn against the background of the "American rule" that a litigant shall bear his own attorney's fees. And further, there is no evidence that Congress, in its enactment of 42 U.S.C. § 1988, intended to incorporate thereby a broadening of the meaning of "costs" in Rule 68.

Defendants made an offer of judgment on October 1, 1981. Comparing the Offer of Judgment of October 1, 1981, with the Interim Order of November 4, 1981, and the Memorandum and Order of August 31, 1982 (relief award), this court finds:

■ A comparison of the Interim Order and Offer of Judgment shows that the Offer of Judgment fails to meet the needs of these critical areas.

1. Pharmaceutical reform,
2. Punishment reform,
3. Feeding reform,
4. Skills and need inventory. (Provision is made for areas of problem evaluation, for example, dental care, but no provision is made for development of a comprehensive individualized program.)

The Offer of Judgment incorporates the language of the North Dakota statutory, and the ACMR/DD[1] definitions. Then it recited many specific and detailed programs for upgrading buildings, employing additional help, and undertaking to develop community placements. As any such detailed program must, it contains numerous caveats in anticipation of administrative breakdowns.

The offer contains infinite detail, too precise to be "cast in the bronze of judicial decree," and it contains caveats which make the dictates of the offer precatory rather than mandatory. I find the Offer of Judgment is not more favorable than the Interim Order.

Turning to a comparison of the order of August 31, 1982, and the Offer of Judgment: The criticisms previously stated still apply. For example, the order of August 31, 1982, required immediate alleviation of overcrowded conditions at the central institutions. The Offer of Judgment would allow a total of 800 community placements by 1988. However, specific provision is made that these placements could be made from

---

*Herbert Coleman, et al.,* 689 F.2d 774 (8 Cir. 1982).

As to good faith of defendants: See *Williams v. Miller,* 620 F.2d 199 (8th Cir.1980).

As to provocative role: See *Harrington v. DeVito,* 656 F.2d 264 (7th Cir.1981), and *United*

*Handicapped Federation v. Andre,* 622 F.2d 342 (8th Cir.1980).

1. Accreditation Council for Services for Mentally Retarded and other Developmentally Disabled Persons. Chapter 25–01.2, N.D.C.C.

the community as well as from the institutions. Placements from the community do not alleviate existing overcrowding in the institutions.

From this analysis, I conclude that the offer of judgment is not as favorable as the relief finally obtained, and, therefore, under Rule 68, Fed.R.Civ.P., defendants are not entitled to a reduction in costs as a result of the offer.

In addition to a determination of fees earned after November 14, 1981 plaintiffs have petitioned for an increase in the fees allotted under the order of December 16, 1981. That order and its supplement are attached to this order as Appendix II and III.

The order of December 16, 1981, provided in part that:

> ... this Court finds that the payment of some interim attorneys' fees are in order, and that the rates of the fees must be established after consideration of whether more experienced lawyers could have produced the same results with substantially less expenditure of time. This Court also finds that while some allowance for fees is justified at this time, the hourly rate of the fee should be temporarily held low in order to review the total fee at the conclusion of the case. Any incentive or multiplier fee will not be determined at this time.

To better compute the fees, this court has separated the fee computation into two parts. The first part has to do with the fees earned by October 31, 1981, and covered by the order of December 16, 1981, which will be designated as the *Preparation Phase* of the litigation.[2] The fees covered from November 1, 1981 to September 1, 1982 will be designated as the *Trial Phase* of the litigation.

■ As to the Preparation Phase, applying the standards derived from *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), this court concludes:

1. The time and labor required: While the defense resists the amount of plaintiffs' preparation, the court is convinced the work done is accurately reported. The case involved many persons and many problems. Extensive preparation was justified.

2. Novelty and difficulty of issues: This case was the first of its kind in North Dakota, and counsel had to face the jealous and fierce independence of the State officials and legislative leadership. The issues were novel and foreign, and, therefore, disturbing to the very people who had to be sought out for the issue development. The issues were difficult to present effectively because of the mass of material to be gathered and organized. And the case had to be presented through experts whose approach was as often philosophic as it was scientific.

3. Skill required: These continuing problems of voluminous detail, and excessive desire to cooperate on one hand, and resistance to cooperation on the other hand, demanded great skill on the part of counsel preparing and organizing the lawsuit.

4. Preclusion of employment: The hours worked by the two lead counsel, Williams and Schneider, were so many that it is obvious they had no time left for other extensive employment.

5. Customary fee: I conclude from the record that the customary fee of both lead counsel was $70.00 per hour.

6. Contingency of fee: Since the plaintiffs are without funds, unless the plaintiffs are "prevailing" parties, the plaintiffs' counsel can receive no fees. And there must be added into this element the fact that the positions taken by the defense have created an additional contingency as to when counsel will be paid.[3]

---

**2.** See p. 2, Affidavit of John S. Kapsner, Docket No. 276.

**3.** See Order of May 7, 1982.

7. Results obtained: As a direct result of the plaintiffs' preparation, the defense admitted liability prior to October 31, 1981. Thus the results of the preparation are excellent.

8. Experience, reputation, ability of attorneys: Neither lead counsel for the plaintiffs had extensive federal court experience. Both have impeccable reputations, and high ability.

9. Undesirability: As pointed out under item 2 above, the difficulty of development of the issues was in part a product of resistance by established authorities to the bringing of the action. This is an element also in any evaluation of undesirability. Plaintiffs and their counsel have been subjected to public attack by the Governor, the Attorney General, key legislators, and others during the pendency of the case. The case has been both socially and politically unpopular. Further, the problems inherent in funding such a lawsuit have made the case undesirable for many law firms.

10. Nature of relationship: The plaintiff class is not able to assist counsel to any degree in preparation of the case. The problem of meaningful communication with the class representatives is itself a major project.

11. Awards in similar cases: The average rate in the North Dakota legal community is generally recognized as between $50.00 and $125.00 per hour. Albert A. Wolf, lead counsel for the State, an experienced trial lawyer actually charged $70.00 per hour for non-trial time, and $125.00 per hour for trial time. (See statements of Mr. Wolf, Docket No. 289.) In the *Welsch* case[4] in Minnesota, an award of approximately $70.00 per hour was allowed.

After a careful review of all the briefs and affidavits, and recitals of work done and costs claimed, this court concludes:

1. That no good cause has been shown to question the time and work claimed by the plaintiffs during the Preparation Phase of this action.

2. That the order of December 16, 1981, as to fees is confirmed and readopted as a portion of this order.

3. That the Order of May 7, 1982, denying contempt is, as to the fee decision, confirmed and readopted, specifically in response to the factor in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, entitled "Contingency," and in this case addressed to doing equity in the face of a program of delay in payment of fees.

4. That pursuant to the provisions of the Order of December 16, 1981, the base fee:

| | |
|---|---|
| Of Michael J. Williams for 2,315.75 hours is increased by $20.00 to $70.00 per hour, causing an increase in fees of | $46,315.00 |
| Of Mary Schneider for 1,444 hours is increased by $20.00 to $70.00 per hour, causing an increase in fees of | $28,880.00 |
| The fees of the assistant counsel remain unchanged, making the fees for lead counsel and their staffs total: | |
| | |
| Amount allowed in order of December 16, 1981 | $183,197.50 |
| Additional allowance to Williams | 46,315.00 |
| Additional allowance to Schneider | 28,880.00 |
| Total Fees, Preparation Phase | $258,392.50 |

Turning now to the computation of fees for the Trial Phase, again, it is appropriate to begin the analysis by a review of the factors in *Johnson.*

The discussion under the Preparation Phase as to factors numbered 4, 5, 6, 8, 9, 10, and 11, are equally applicable to the Trial Phase and will not be reiterated.

1. Time and labor required: While the defense contests the need for some of the labor reported, and contests the manner in which some of the time of

---

4. *Welsch v. Likins,* 550 F.2d 1122 (8th Cir. 1977), 373 F.Supp. 487 (Minn.1974), Affidavit

of P. Kenneth Kohnstamm, Docket No. 288.

lead counsel was used (example, billing at lead counsel rates for copying records with a duplicating machine), it does not effectively disprove the assertion that the time spent was accurately reported.

2.  Novelty and difficulty of issue: Given the state's realistic recognition of its obligation of "liability" to the plaintiffs, the novelty and difficulty lay in establishing the problems and factors inherent in tailoring the numerous and variable remedies demanded by those problems and factors. This required extensive examination of expert witnesses, and the necessary preparation for that.

3.  Skill required: Plaintiffs undertook to organize and present more than a thousand exhibits, and to offer testimony from 24 witnesses, most of whom were presented as experts, specialists in a particular phase of care or treatment. Considerable skill was required of counsel, and considerable skill was demonstrated.

4.  Time limitations imposed by the client or circumstances: The trial schedule imposed a burden on all counsel. This court, working as it does in a relatively isolated Federal District, served by only two active federal trial judges could not allow the criminal and emergency civil work of the court to be put on an extended stay. So this case, which took 31 trial days, had to be interrupted repeatedly over a six month period, and often on very short notice. So the demands of scheduling interfered with counsels' freedom to process other work.

This court's records of the trial show considerable time taken up in these two areas:

1.  Repetitive discussion of existing conditions in the institutions.

2.  Excessive detail as to care and training techniques by the various experts.

Since these matters had at least some relevance to the issues of appropriate remedies, it would not be proper for this court to reject that evidence and the time used to prepare it, because its presentation is a judgment decision which normally is the responsibility of the trial lawyer. But this court can and does evaluate the usefulness of the evidence when determining a fee for its presentation.

As to the attorneys' fees due the plaintiffs for the Trial Phase, this court finds a reasonable fee for trial counsel to be $75.00 per hour, and a reasonable fee for support counsel to be $50.00 per hour.

While the concept of a bonus, or multiplier fee is recognized,[5] this court denies the motion for a multiplier fee except as hereafter authorized.

█ It is the opinion of this court that the case should have been presented in two-thirds of the time actually used. Since good trial practice requires that the trial record be fashioned to support any necessary appeal, the trial court may use its opinion to evaluate, but not to foreclose trial counsels' concept of an adequate record. To apply that standard, this court accepts the report of hours spent, and, therefore, to be paid for; but it concludes that the bonus for work well done, or "multiplier" principle is met by allowing full pay for the time spent. So, here, by a sort of negative analysis, plaintiffs receive a 50% multiplier when they are paid the standard fee for the full three-thirds of the trial.

█ Thus, this court allows as counsel fees for the Trial Phase:

| | | |
|---|---|---|
| Williams | 1,424.00 hours at | |
| | $75.00 per hour | $106,800.00 |
| Schneider | 1,142.75 hours at | |
| | $75.00 per hour | 85,706.25 |
| Varvel | 37.00 hours at | |
| | $50.00 per hour | 1,850.00 |
| Kapsner | 78.00 hours at | |
| | $50.00 per hour | 3,900.00 |

TOTAL ATTORNEY FEES   $198,256.25

Costs:

In the Order of December 16, 1981, this court concluded that:

5.  *Northcross v. Board of Ed. of Memphis City*   *Schools,* 611 F.2d 624, at 638 (6th Cir.1979).

Work done by law clerks, paralegals, or expenses connected with secretaries are generally regarded as part of law office overhead.

See, *Scheriff v. Beck*, 452 F.Supp. 1254 (D.Colo.1978), and also *Rajander v. University of Minnesota*, Civil No. 4–73–435 (D.Minn. July 23, 1982).

■ In evaluating the allowable costs, this court finds that all costs claimed have been incurred. But only those costs incurred in travel, service fees, deposition work, investigation fees, and per diem, and such costs as are not part of routine law office operation will be allowed. Applying those principles, I find the allowable costs of the plaintiffs to be:

| | | |
|---|---|---|
| 1. | Williams, Preparation Phase | $28,506.98 [6] |
| 2. | Williams, Trial Phase | 21,961.48 [7] |
| 3. | Schneider, Preparation Phase | 6,707.60 [8] |
| 4. | Schneider, Trial Phase | 7,337.89 [9] |
| | TOTAL | $64,513.95 |

From the Findings above recited, this court concludes: [*]

| | | |
|---|---|---|
| 1. | That for the Preparation Phase, the plaintiffs are entitled to the following attorneys fees: | |
| | a. As determined in the Order of December 16, 1981 | $183,197.50 |
| | b. Plus additional fees as follows: | |
| |   1. Williams | 46,315.00 |
| |   2. Schneider | 28,880.00 |
| 2. | Plus additional attorneys fees for the Trial Phase in the sum of | 198,256.25 |
| 3. | And expenses for the Preparation Phase and Trial Phase | 64,513.95 |
| | TOTAL | $521,162.70 |

Items 1(b), 2 and 3, shall bear interest at the rate fixed by law from the date of this order.

IT IS SO ORDERED.[10]

APPENDIX I

LAWYERS TIME

PLAINTIFFS LAWYERS

Preparation Stage:

| | | |
|---|---|---|
| 1. | Williams | 2,315.75 hours |
| 2. | Schneider | 1,144.00 hours |
| 3. | Lawyer Assistants | 255.25 hours |
| | | 3,715.00 hours |

6. Plaintiffs' amended statement of costs, June 7, 1981 through November 12, 1981, Docket No. 122.

7. Plaintiffs' statement of costs, November 17, 1981 through August 31, 1982, Docket No. 276.

8. Affidavit of costs, September 12, 1980 through November 14, 1981 (dated December 14, 1981), Docket No. 276.

9. Affidavit of costs, October 26, 1981 through July 1, 1982 (dated August 18, 1982), Docket No. 276. (There is an overlap of dates between these affidavits, but no apparent overlap of charges.)

10. In *Obin v. Dist. No. 9 of Intern. Ass'n, Etc.,* 651 F.2d 574 (8th Cir.1981), the court said:
We conclude therefore, that a motion for attorney's fees raises a collateral and independent claim, not an application for costs under Rule 54(d) or a matter integral to the merits of the action. p. 582
and again:
This court deems it essential that all district courts follow a consistent practice of promptly hearing and deciding attorney's fees claims in civil rights and other cases so that any appeal by an aggrieved party from the allowance or disallowance of fees can be considered by this court together with any appeal taken from a final judgment on the merits. p. 583
The court then summarized its rule as follows:
4. The district court's order on the claim for attorney's fees is separably appealable as a final judgment and may be consolidated with any pending appeal on the merits of the action. In order to enable the appeals to be consolidated this court requests that district courts promptly decide attorney's fees issues. p. 584
The filing of a notice of appeal has the effect of immediately transferring jurisdiction from the district court to the court of appeals with the respect to any matters involved in the appeal. It divests the district court of authority to proceed further with respect to such matters except in aid of the appeal .... Moores Federal Practice and Procedure, Volume 9, § 203.11.
Since the determination of fees under 42 U.S.C. § 1988 is the resolution of a collateral matter, and if done will relieve the Circuit Court of the necessity for a fragmented appeal, the order is entered this date despite the fact of the appeal.

LAWYERS TIME

PLAINTIFFS LAWYERS

Trial Stage:

| | | | |
|---|---|---|---|
| 1. Williams | | 1,424.00 hours | |
| 2. Schneider | | 1,142.75 hours | |
| 3. Lawyer Assistants | | | |
| Mary Varvel | 37.00 hours | | |
| John Kapsner | 78.00 hours | 115.00 hours | |
| | | | 2,681.75 hours |

Total lawyer hours for plaintiffs in presenting case     6,396.75 hours

DEFENDANTS LAWYERS

| | | |
|---|---|---|
| 1. Hovland | 1,487.00 hours | |
| 2. Johnson | 1,205.50 hours | |
| 3. Wolf | 530.20 hours | |

Total lawyer hours for defendants in defending case     3,222.70 hours

FEES AND EXPENSES CLAIMED

PLAINTIFFS COSTS CLAIMED

| | | |
|---|---|---|
| Kapsner Firm Preparation Stage | $32,694.94 | |
| Kapsner Firm Trial Stage | 27,861.91 | |
| Schneider Preparation Stage | 7,397.87 | |
| Schneider Trial Stage | 9,527.94 | |
| TOTAL COSTS CLAIMED | | $77,482.66 |

FEES AND EXPENSES CLAIM BY PLAINTIFFS

1. Kapsner Firm

| | Lodestar fee | Multiplier fee | Total |
|---|---|---|---|
| All Attorneys | $295,190.00 | $295,190.00 | $590,380.00 |
| Law Clerks | 1,760.00 | – 0 – | 1,760.00 |
| Paralegal | 10,760.00 | – 0 – | 10,760.00 |
| TOTAL FEES | $307,710.00 | $295,190.00 | $602,900.00 |
| Expenses through October 31, 1981 | 32,694.94 | | 32,694.94 |
| Expenses from November 1, 1981 to | 27,861.91 | | 27,861.91 |
| TOTAL FEES AND EXPENSES CLAIMED | $368,266.85 | $295,190.00 | $663,456.85 |

2. Legal Assistance of North Dakota

| | | | |
|---|---|---|---|
| Attorneys | $162,662.50 | $162,662.50 | $325,325.00 |
| Paralegals | 5,365.00 | – 0 – | 5,365.00 |
| Expenses to 11/14/81 | 9,527.94 | | 9,527.94 |
| Expenses from 11/14/81 to | 7,297.31 | – 0 – | 7,397.87 |
| TOTAL FEES AND EXPENSES CLAIMED | $184,852.75 | $162,662.00 | $347,615.81 |
| TOTAL PLAINTIFFS FEES AND COSTS CLAIMED | | | $1,011,072.66 |

FEES AND EXPENSES CLAIMED BY DEFENDANTS

For the Period October 1, 1981 to June 24, 1982 [1]

| | |
|---|---|
| Expert Witness Fees and Expenses | $ 21,597.35 |
| Staff Travel Expenses | 8,964.18 |

[1]. These fees and expenses are presumably short since they do not cover the Preparation Phase from 1980 to October 1, 1981.

FEES AND EXPENSES CLAIMED BY DEFENDANTS

| | |
|---|---:|
| Court Reporters | $  5,357.54 |
| Copies (est.) | 4,000.00 |
| Attorneys' Fees | |
|     Outside counsel | 56,874.02 |
|     Staff | 140,652.50 |
| Miscellaneous Expenses | 1,955.72 |
| Temporary Employees | 22,177.97 |
| Director of Institutions | 29,554.00 |
| **TOTAL FEES AND EXPENSES CLAIMED** | **$291,133.28** [2] |

## APPENDIX II

## MEMORANDUM AND ORDER

The plaintiffs have presented to the Court a motion for an interim award of attorneys' fees, expenses, and costs in the amount of $322,438.94, pursuant to Title 42 U.S.C. § 1988, Title 28 U.S.C. § 1920, and Section 25–01.2–17 of the North Dakota Century Code. The defendants oppose the motion and contend that attorneys' fees, expenses and costs should not be allowed at this stage of the action. The contentions of the defendants can be summarized as follows:

(1) The limited relief granted to the plaintiffs pursuant to the interim order issued by this Court on November 4, 1981 does not justify an award of attorneys' fees, expenses and costs;

(2) If the final relief obtained by the plaintiffs is less than the relief contained in the defendants' offer for judgment, an award of attorneys' fees, expenses and costs would be precluded;

(3) The plaintiffs' request for an incentive or multiplier fee of 1.5 times the calculated fee awarded by the Court should be denied;

(4) If the Court does award attorneys' fees, expenses and costs, counsel for the plaintiffs' who are employed as staff attorneys with Legal Assistance of North Dakota should not be compensated at the same rate as private attorneys; and,

(5) The request for an interim award of attorneys' fees is objectionable because it claims compensation for attorneys who are not counsel of record in the case.

Generally, the parties to a lawsuit are responsible for their attorneys' fees irrespective of which party ultimately prevails in the lawsuit. An exception to this rule occurs in cases involving claims asserted under Title 42 U.S.C. § 1983. In this lawsuit, the plaintiffs have relied upon Title 42 U.S.C. § 1983 and various state statutes to raise issues concerning the care and treatment of developmentally disabled persons in North Dakota. The applicable statutes authorizing an award of attorneys' fees are Title 42 U.S.C. § 1988 and Section 25–01.2–17, N.D.C.C.

Ordinarily, the prevailing party in an action based upon Title 42 U.S.C. § 1983 should recover attorneys' fees unless special circumstances render such an award unjust. *Williams v. Miller,* 620 F.2d 199 (8th Cir. 1980). Under Title 42 U.S.C. § 1988, the defendants have the burden of proving special circumstances which justify denial of an award of attorneys' fees. This Court concludes that the defendants have not met this burden.

---

**2.** The above expenditures do not include an application of administrative overhead. Such expenses would add substantially to the total expenses incurred. In addition, the above expenditures do not include telephone calls, postage, or the costs incurred by many of the named defendants and their staff in defense of this lawsuit over the course of the last two years. Hundreds of man-hours have been expended by the defendants and other state employees, none of which are set forth in this statement of expenses but all of which are compensable and would substantially increase this total. (Defendants' brief regarding Rule 68 claim, Docket No. 288, p. 11.)

In order to obtain an award of attorneys' fees, a party to a lawsuit must be a prevailing party. Under the relevant decisions of the Eighth Circuit Court of Appeals, a plaintiff who succeeds on the merits of a case at any stage is considered a prevailing party. *Cleverly v. Western Electric Co.,* 594 F.2d 638 (8th Cir.1979). Plaintiffs who obtain preliminary or interim relief are prevailing parties. *Kimbrough v. Arkansas Activity Association,* 574 F.2d 423 (8th Cir. 1978). The legislative history of Title 42 U.S.C. § 1988 supports the view that an award of attorneys' fees is appropriate where a party prevails on an important matter in the course of the litigation, even though the party may not prevail on all of the issues raised in the case.

The pleadings of the parties together with the interim order issued by this Court establish that the plaintiffs have prevailed on several important issues raised in the lawsuit. In their answer, the defendants have conceded that they have not provided appropriate habilitative care under both federal and state law. The interim order issued by this Court recognizes this fact and seeks to remedy deficiencies in basic care provided to the developmentally disabled. The defendants now argue that the plaintiffs are not entitled to an award of attorneys' fees because of the defendants' offer for judgment. In the ordinary circumstance, the defendants' contention would be relevant; however, the relief granted by this Court to the plaintiffs under the interim order has far surpassed the terms and conditions stated in the offer for judgment proposed by the defendants.

Having established that the plaintiffs are entitled to an award of attorneys' fees, the Court is next concerned with the issue of applying an incentive or multiplier fee of 1.5 to the calculated fee awarded by this Court. Courts awarding such incentive or multiplier fees do so because of the complexity and risk involved in the litigation. The Court concludes that it will not award a multiplier fee at this time, but reserves any evaluation of a multiplier fee for consideration at a later more appropriate time.

Although the defendants argue that employees of Legal Assistance of North Dakota who serve as counsel to the plaintiffs are not entitled to the same rate of compensation as private attorneys, the case law is overwhelmingly to the contrary. An award of attorneys' fees cannot reflect a prorata reduction for federal or state financial support to legal services. *Schmidt v. Schubert,* 433 F.Supp. 1115 (D.Wis.1977). The Eighth Circuit has established that it is inappropriate for a Court to consider that the prevailing plaintiffs' attorney works for a legal aid organization when the Court awards attorneys' fees. *Oldham v. Ehrlich,* 617 F.2d 163 (8th Cir.1980).

The defendants also argue that attorneys' fees may only be awarded to an attorney of record. The language of Title 42 U.S.C. § 1988 cannot be read so narrowly. The statute does not limit an award of attorneys' fees to attorneys of record. The purpose of the statute is to encourage attorneys to enforce fundamental constitutional rights. Under the circumstances of this lawsuit, an award of attorneys' fees restricted to counsel of record would frustrate the purpose of the statute. The vindication of important constitutional rights should not depend upon the charitable instincts of generous attorneys. The Court concludes that all attorneys who have worked on the case are entitled to be compensated for their efforts.

Finally, the fact that the defendants have acted in good faith and have attempted to settle many of the issues involved in the lawsuit does not preclude an award of attorneys' fees. See *Arkansas Community Organizations for Reform Now v. Arkansas State Board of Optometry,* 468 F.Supp. 1254 (D.Ark.1979); *Love v. Mayor, City of Cheyenne, Wyoming,* 620 F.2d 235 (10th Cir. 1980). In addition, the Eleventh Amendment to the United States Constitution does not prevent an award of costs and attorneys' fees against state officials. *Welsch v. Likins,* 68 F.R.D. 589 (D.Minn.1975), affirmed 525 F.2d 987 (8th Cir.1975).

Two methods are generally used to determine the proper amount of attorneys' fees, expenses and costs to award to a prevailing

party. Denominated as the lodestar approach and the Johnson approach, both methods have been approved by the Eighth Circuit. *Allen v. Amalgamated Transit Union, Local 788,* 554 F.2d 876 (8th Cir.1977) cert. denied, 98 S.Ct. 266, 434 U.S. 891, 54 L.Ed.2d 176 (1977). The Johnson approach, which is derived from *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), utilizes twelve factors in calculating the award of attorneys' fees:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorneys due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation and ability of the attorneys;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and,

(12) awards in similar cases.

Costs are statutory allowances to a party to a lawsuit for expenses incurred in the lawsuit. Title 28 U.S.C. § 1920 is the general statute on costs. It allows as costs:

(1) fees of the clerk and marshal;

(2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) fees and disbursements for printing and witnesses;

(4) fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) docket fees under Title 28 U.S.C. § 1923; and,

(6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under Title 28 U.S.C. § 1828.

Section 25–01.2–17, N.D.C.C., provides for an award of attorneys' fees and costs. The Court does not rely upon this statute in granting the award of attorneys' fees, expenses and costs in this case.

Title 42 U.S.C. § 1988 provides for the allowance of a reasonable attorneys' fee as part of the statutory costs. Under this concept, administrative, travel and office expenses of counsel are allowable as costs only insofar as they are part of the attorneys' fee award. Counsel may elect to itemize these matters as a justification for the total fee charge, and such itemization may persuade the Court to allow the fee requested. However, to honor all such items invites counsel to replace the quality control of his work with bookkeeping for his time spent (examples are charges for meals during conferences, or conferences with representatives of the media).

Using the above approach, and after viewing the specific items listed in the plaintiffs' affidavits, this Court concludes that the judgment decision of the attorneys as to the work they had to do in order to prepare the case is not open to question. However, the Court also concludes that with additional experience counsel for the plaintiffs will be able to produce more work with less effort and expense. "The Court concludes that it must compute into an allowance of attorneys' fees an override to cover as internal expenses such matters as follow:"

| | | |
|---|---|---|
| (1) | law clerks | $ 1,760.00 |
| (2) | paralegals | $10,505.00 |
| (3) | counsel travel expenses | $ 9,348.80 |
| (4) | meals | $ 1,329.40 |
| (5) | postage | $ 78.12 |
| (6) | copy work not used at trial | $ 3,367.71 |
| (7) | phone expenses | $ 607.75 |
| (8) | photography not used in trial | $ 275.00 |
| (9) | press conferences, association meetings, etc. | ? |
| (10) | additional costs such as costs of accounting and billing | ? |

In calculating the award of attorneys' fees, the first consideration is the time and labor required. At this stage of the lawsuit, and through October 30, 1981, the attorneys working on the lawsuit have expended the following work hours:

| | |
|---|---|
| Michael J. Williams | 2,315.75 |
| Mary Schneider | 1,144.00 |
| Luther Grandquist | 115.75 |
| John C. Kapsner | 42.50 |
| Joy Wezelman | 41.00 |
| Mary Varvel | 37.00 |
| Carol Ronning Kapsner | 19.00 |
| Total | 3,715.00 |

Law clerks had worked 88 hours while paralegals had worked 525.25 hours on the lawsuit. These costs are not compensable as a separate item under Title 42 U.S.C. § 1988. *Scheriff v. Beck,* 452 F.Supp. 1254 (D.Colo.1978). The reason for this distinction is that work done by law clerks, paralegals, or expenses connected with secretaries are generally regarded as part of law office overhead. This conclusion does not mean that such expenses are not compensable; rather, the costs are compensable as a part of the fees for which the defendants may ultimately be responsible.

The defendants argue that only time spent on issues on which the plaintiffs prevail should be compensated. However, the case law does not support this argument. *Reproductive Health Services v. Freeman,* 614 F.2d 585 (8th Cir.1980). Thus, all hours expended by attorneys for the plaintiffs on issues which they win or lose must be compensated. While the defendants also contend that much duplication of effort has occurred among the attorneys for the plaintiffs, the extent of the discovery process, and other incidents of litigation in cases of this magnitude would seem to require some duplication of effort.

Although the issues raised in this lawsuit are not novel, the issues are difficult because of the nature of the evidence required to prove the plaintiffs' case. The law is not settled on many of the questions presented to the Court for determination. The constitutional issues presented in the lawsuit span the entire range of legal complexity. While the attorneys for the plaintiffs lack experience in handling other cases of this nature, they have been assisted by experienced counsel in preparation of the case and the product of their efforts is excellent. This lawsuit has precluded other employment for at least one attorney.

Counsel seek to be compensated at a rate of $75.00 per hour for each hour expended by every attorney working on the case. The normal rate charged by Mr. Williams is $70.00. The plaintiffs' attorneys assert that other attorneys in the Bismarck area who litigate complex civil matters routinely charge from $90.00 to $100.00 per hour. Mr. Williams and other members of the law firm in which he is employed do not have separate in-court and out-of-court rates. The hourly rate of compensation awarded by the Court will not be reduced by the fact that attorneys employed by Legal Assistance of North Dakota are employed as attorneys by the plaintiffs; nor will those attorneys be compensated at a rate lower than private attorneys would be compensated for comparable work. The work done by the attorneys consists of preparation for trial or court appearances together with time spent in court.

The time limitations imposed by the nature of the problems possessed by the plaintiff class are great. The Court recognizes the constraints this has placed upon counsel for the plaintiffs in their preparation of this lawsuit. Aside from this limitation, the lawsuit can be viewed as undesirable in many respects. The primary difficulty is the intense political climate surrounding a lawsuit of this nature. Other difficulties include the financial burden involved in funding such a lawsuit. Communication with members of the plaintiff class in this class action lawsuit has been difficult. At this time, the litigation has extended beyond one year and continued litigation is almost certain. The financial problems presented by the prospect of continued litigation have precipitated the plaintiffs' motion for attorneys' fees.

In the view of the Court, out-of-pocket expenses incurred by the attorneys which

are normally charged to a fee paying client are to be included in the award of attorneys' fees. The ultimate fee awarded by the Court will give consideration to such matters. *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979). Other costs, such as docket fees, investigation expenses, deposition expenses, and costs associated with the trial of this action are recoverable under Title 28 U.S.C. § 1920 and Rule 54(d) of the Federal Rules of Civil Procedure. Although the depositions and other discovery conducted by the plaintiffs are reasonably necessary for disposition of the case, the determination of compensation for such expenses must wait until trial or the final disposition of the case. It is only at such time that a determination can be made on whether the extent of the discovery was reasonable and necessary.

"Based upon the affidavits, case files and the observations of the Court, this Court finds that the payment of some interim attorneys' fees are in order, and that the rates of the fees must be established after consideration of whether more experienced lawyers could have produced the same results with substantially less expenditure of time. This Court also finds that while some allowance for fees is justified at this time, the hourly rate of the fee should be temporarily held low in order to review the total fee at the conclusion of the case. Any incentive or multiplier fee will not be determined at this time. This Court concludes that attorneys' fees encompassing net fees and costs normally included in net fees are allowed at the rate of $50 per hour for counsel of record and $40 per hour for associate counsel". The total amount of attorneys' fees awarded at this time is computed as follows:

| | | | |
|---|---|---|---|
| Michael J. Williams | | 2,315.75 multiplied by $50 per hour | |
| | Total | $115,787.50 | |
| Mary Schneider | | 1,144.00 multiplied by $50 per hour | |
| | Total | $ 57,200.00 | |
| Luther Grandquist | | 115.75 multiplied by $40 per hour | |
| | Total | $ 4,630.00 | |
| John C. Kapsner | | 42.50 multiplied by $40 per hour | |
| | Total | $ 1,700.00 | |
| Joy Wezelman | | 41.00 multiplied by $40 per hour | |
| | Total | $ 1,640.00 | |
| Mary Varvel | | 37.00 multiplied by $40 per hour | |
| | Total | $ 1,480.00 | |
| Carol Kapsner | | 19.00 multiplied by $40 per hour | |
| | Total | $ 760.00 | |
| Total attorneys' fees awarded | | $183,197.50 | |

Therefore, IT IS ORDERED that the defendants pay to counsel for the plaintiffs the amount of $183,197.50 as attorneys' fees.

## APPENDIX III

Plaintiffs have moved for an order finding the Defendants in contempt for failure to obey the Order of November 4, 1981, which provided among other things:

"... that immediate minimal staffing additions of one hundred twenty-five (125) persons should be provided in order for the Defendants to provide the basic care required by this Order.

a) *Psychologists.* An additional four (4) psychologists should be recruited and hired forthwith.

b) *Nurses.* An additional ten (10) licensed practical nurses and an additional ten (10) registered nurses should be recruited and hired forthwith; provided, however, that if defendants, after exercising good faith recruiting efforts are unable to hire registered nurses, licensed practical nurses may be hired in lieu of registered nurses.

c) *Direct Care Staff.* An additional ninety (90) resident care technicians should be recruited and hired forthwith.

d) *Physical Therapy/Occupational Therapy.* Defendants should contract with the necessary physical and occupational therapy personnel to provide the services required by paragraph 5 herein."

Plaintiffs have also moved for an order finding the Defendants in contempt for failure to obey the Memorandum and Order of December 16, 1981, which directed:

"... that·the defendants pay to counsel for the plaintiffs the amount of $183,197.50 as attorneys' fees."

The United States District Court is required to hear this case by virtue of 42 U.S.C. § 1983, which provides that:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

And by virtue of 28 U.S.C. § 1331 which provides that:

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Counsel for the Plaintiffs have an obligation to present the Plaintiffs' cause to the best of their ability, addressing themselves to the best interest of their clients, above and beyond the mere winning of a lawsuit.

Counsel for the Defendants, officers of the State of North Dakota (North Dakota is not a party named in this action), also have an obligation which transcends the winning of a lawsuit. They must protect their clients, and also assist them in the execution of their duties as officers of the State.

Against this background we turn to the motion to find a contempt for failure to comply with the Order of November 4, 1981.

That Order was drawn by counsel for both sides, working together; selecting the subject matter and drafting the language. As so prepared by counsel, it was issued as an Order of the Court. While there were some defense counsel who felt their use of the word "should" was precatory rather than mandatory, counsel abandoned that claim, and now recognize that it was used as a synonym of "shall" or "must."

The evidence presented by the defense shows that after November 4, 1981, the defendants are filling the Court ordered positions on this schedule:

| | | |
|---|---|---|
| Nov. 1981 | 0 | |
| Dec. 1981 | 0 | |
| Jan. 1982 | 37 | No further hirings until |
| Feb. 1982 | 0 | after the 1983 Legislative |
| Mar. 1982 | 0 | Session. Justification: |
| Apr. 1982 | 9 | No funds originally budgeted. |
| May 1982 | 9 | |
| June 1982 | 10 | |

The first two months of non-employment are excused as time for the Christmas and New Year period to pass, and as time to prepare for the influx of new workers. No hirings during February and March, 1982, can be justified as necessary to further develop the technique of phasing in new employees.

But the decision to employ no more persons after June, 1982, is a clear violation of the commitment made in the stipulated order.

Defendant, Director of Institutions, has stated by affidavit that:

"(3) The Grafton State School hired 31 direct care staff in January, 1981. By March, 1981, twelve of those hired had quit their positions in Wylie and West Halls. The Grafton School has since filled those vacancies.

(4) Grafton State School hired an additional nine direct care staff in April, 1982. The total number of direct care staff hired pursuant to the Court's Order thus far is 41.

(5) Plans have always existed to sequentially phase-in nine direct care positions in May, 1982, and another ten by the end of June, 1982. Grafton State School has now been authorized and will plan to fill

ten direct care positions in July, ten direct care positions in August, and ten direct care positions by the end of September, 1982. Thus, the Grafton State School will be in full compliance with the Court's Order regarding direct care staff by the end of September, 1982."

Dr. Glenn Weiand testified that with existing personnel he could train twenty, not ten new employees a month. Dr. Weiand admitted that with the support of adequate professional staff he could have handled more, with difficulty, but adequately. Transcript of Weiand testimony, pages 27 and 35.

In fact, after commencement of this proceeding, Defendants discovered they could hire thirty additional direct care personnel by September.

Counsel, although reminded in a collateral order [the Order of January 13, 1982] of appellate avenues they might consider, made no move to effect an appeal. Nor did they claim, until this proceeding, that the Order of November 4, 1981, was physically incapable of compliance.

In fact, the Order was physically possible to comply with as early as April, 1982, but the decision not to comply was wholly a matter of "budgetary constraints."

Thus, in summary, the Defendants, officers of the State of North Dakota, concede that Grafton and San Haven are not adequately staffed, and are below constitutionally acceptable minimal standards. Despite a voluntary commitment to reach toward those standards, they have elected to default on that commitment, claiming only "budgetary constraints" to justify such action.[1]

The officers of the State of North Dakota claim they are not left with sufficient authority to complete these hirings although they have had readily available an emergency fund, and are husbanding a substantial general fund balance.

However the officers of the State represent the people of the State, and must be

treated with respect out of deference to the people of the State. The sanction of a contempt proceeding is an extreme sanction, and the fact of a contempt must be established by clear and convincing evidence.

"... Since the 'disciplinary weapon is at the severe end of the spectrum ... a civil contempt order ... should only be imposed when there is clear and convincing proof of a violation of a court decree.' " *Erhardt v. Prudential Group, Inc.,* 629 F.2d 843 (2d Cir.1980) and *Swift v. Blum,* 502 F.Supp. 1140 (1980).

I conclude that at this stage of the litigation it is not proper to find the Defendants in contempt of Court. However, it is apparent to me that a supplement to the Order of November 4, 1981, must be made.

Before issuing the supplemental order, it is appropriate to observe that by virtue of Article IX, Section 12, Paragraph 8 of the Constitution of North Dakota, and Chapter 25 NDCC, the State does not have the option to abandon the residents of Grafton and San Haven. Nor does the State have the option to force the cost of care back onto the parents or residents. 25–04–05(3) and 25–09–02 NDCC. But it is also true that, as Judge Henley said in *Welsch v. Likins,* 550 F.2d 1122 (8th Cir.1977):

"There must be no mistake in the matter. The obligation of the defendants to eliminate existing unconstitutionalities does not depend upon what the Legislature may do, or upon what the Governor may do, or, indeed, upon what the defendants may be able to accomplish with means available to them. As stated, if Minnesota is going to operate institutions like Cambridge, their operation is going to have to be consistent with the Constitution of the United States."

Therefore,

IT IS ORDERED that the Defendants must either:

a. Comply with all of paragraph 8 of the Order of November 4, 1981, by September 1, 1982, or

---

1. It appears to the Court that the responsible officers of the State of North Dakota do not realize, as the State's counsel do, the exposure those officers are thrusting upon the State by deliberately continuing to violate the Plaintiffs' constitutional rights.

b. Transfer all residents of Grafton and San Haven to hospitals or other facilities which are adequately staffed and maintained by September 1, 1982.

IT IS FURTHER ORDERED that the "advisor" is hereafter designated a "monitor," and the monitor is directed to keep the Court informed on a bi-weekly basis as to actions taken by the Defendants toward compliance with this Order.

Plaintiffs have also moved that Defendants be found in contempt for failure to pay the attorneys fees provided in that Order of December 16, 1981.

The original petition was for the payment of $322,438.94 in attorneys fees and expenses and costs.[2] Fees are clearly allowable to the prevailing party under 42 U.S.C. § 1988 and 25–01.2–17 NDCC. As pointed out previously, Plaintiffs who obtain preliminary or interim relief are prevailing parties. *Kimbrough v. Arkansas Activities Ass'n,* 574 F.2d 423 (8th Cir.1978).

Plaintiffs point out that while lead counsel for the State has received in excess of $33,000.00 in counsel fees, and despite the Defendants' control of various uncommitted but appropriated moneys, and their access to funds of the Emergency Commission [15–06–04 NDCC] and promises of State officials to see to payment of the fees, the payment has not been forthcoming.

The order for payment of fees reflects a total of 3,175 hours of work by a crew of seven lawyers. It reflects a fee allowance of $50.00 per hour for Plaintiffs' lead counsel and $40.00 per hour for support counsel.[3] It reflects a chargeback against those fees of office costs, including law clerks, paralegals, and other expenses of more than $28,-000.00. It leaves unpaid the fees of expert witnesses.

Given these facts, Plaintiffs' claim that the Defendants are deliberately attempting to "starve out" the Plaintiffs and thus deny to them access to the courts.

The authority of this Court to enter into the financial affairs of the State when its officers fail to meet its 42 U.S.C. § 1988 obligations is established beyond controversy. In *Gates v. Collier,* 616 F.2d 1268 (5th Cir.1980) the Circuit Court stated:

"Congress has declared that states and their officials who violate federal civil rights laws must reimburse the successful plaintiff for costs incurred in seeking redress. To strike down the order in this case because it conflicts with the laws of Mississippi would be no different than reversing a bare judgment for attorneys' fees. In either case, we would be allowing the state, by legislative action, to recloak itself with the Eleventh Amendment immunity which Congress has chosen to remove. Such a result would be contrary to the command of the Supremacy Clause of the United States Constitution."

But, again this Court must act with deference to the people of North Dakota and use the sanctions only in extreme circumstances.

The evidence shows that in order for the Plaintiffs' counsel to be made whole if payment is delayed, they must recover:

| | | |
|---|---|---|
| 1. | The principal debt plus | $183,197.50 |
| 2. | A loading to compensate for loss due to inflation, or plus | 11% |
| 3. | A reasonable interest income, or plus | 3% |
| 4. | All lawful interest paid to loaning agencies on operational loans owed by Plaintiffs' counsel during such time as this debt is not paid. | 17½% to 18½% |

Therefore, this Court refrains from finding at this time that the Defendants are in

---

**2.** By his recognition of the realities of law and evidence in this case; and his resultant recognition of the fact of liability; the Attorney General substantially reduced the Defendants' exposure to counsel fees for the Plaintiffs.

The only two issues left for the Plaintiffs to litigate are the scope of the problem, and an appropriate remedy.

**3.** An example of the allowance of fees at $100.00 per hour for lead counsel and $75.00 per hour for support counsel is found in *Swift v. Blum,* 502 F.Supp. 1140 (U.S.D.Ct.S.D.N.Y. 1980).

contempt. Rather, out of deference to the Legislature of the State of North Dakota, and its financial responsibility to the people of the State,

IT IS ORDERED that:

1. Plaintiffs shall receive interest on the fees and expenses previously allowed at the rate of 14% per annum from the date of allowance until paid.

2. Plaintiffs shall receive as additional allowable expenses, all lawful interest paid or incurred by their counsel to loaning agencies for operational loans made in an amount not exceeding the principal sum, from the date of allowance of the fees until payment of the full debt.

IT IS FURTHER ORDERED that as prevailing parties, Plaintiffs shall receive their costs and attorneys fees in this contempt proceeding.

IT IS FURTHER ORDERED that upon proof of non-payment of these and all other accrued fees by the conclusion of the next North Dakota Legislative Session, Plaintiffs shall be entitled to a writ of *fieri facias* directed against the appropriate officers and for satisfaction of the amounts then due.